UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

| | | |
|---|---|---|
| HARTFORD FIRE INSURANCE COMPANY | : | |
| a/s/o Sync Sound, Inc., | : | Case No. 07 CV 2998 NRB |
| | | |
| Plaintiff, | : | |
| **-against-** | : | **DEFENDANTS MOTION SUMMARY JUDGMENT PURSUANT TO RULE 56** (electronically filed) |
| | : | |
| CUSHMAN & WAKEFIELD, INC, and 444 REALTY | : | |
| COMPANY, LLC | : | |
| | | |
| Defendant(s). | : | |

-------------------------------------------------------------------X

MOTION BY:                ROSENBLUM NEWFIELD, LLC
                          Attorneys for Defendants CUSHMAN & WAKEFIELD,
                          INC and 444 REALTY COMPANY, LLC
                          50 Main Street
                          White Plains, NY 10606
                          (914) 686-6100

DATE, TIME & PLACE        United States District Court, Southern District of
OF HEARING:               New York
                          500 Pearl Street
                          New York, NY
                          Date to be determined by the Court before the Honorable
                          United States District Judge Naomi Reice Buchwald

SUPPORTING PAPERS:        Rule 56.1 Statement with attached
                          exhibits/affidavits/documents, and all prior pleadings
                          heretofore had herein, and Memorandum of Law.

RELIEF SOUGHT:            An Order pursuant to Rule 56 of the Federal Rules of Civil
                          Procedure, dismissing Plaintiff's complaint and granting
                          summary judgment to Defendants CUSHMAN &
                          WAKEFIELD, INC and 444 REALTY COMPANY, LLC
                          and for such other and further relief as this Court deems
                          just and proper.

ANSWERING AFFIDAVITS:       If any, to be filed by January 22, 2008, and any reply thereto to be filed by February 5, 2008, pursuant to the order of the Honorable United States District Judge Naomi Reice Buchwald.


Dated: December 28, 2007
      White Plains, NY


Yours etc.
ROSENBLUM NEWFIELD, LLC.

s/ James F.  Biondo

_____
James F.  Biondo / Fed Bar #JB 2429
Attorneys for Defendants
CUSHMAN & WAKEFIELD INC and
444 REALTY COMPANY, LLC
50 Main Street
White Plains, NY 10606
(914) 686-6100


TO:

Michael B. Golden, Esq.
Attorneys for Plaintiff
HARTFORD FIRE INSURANCE COMPANY
a/s/o Sync Sound, Inc
Robinson & Cole, LLP
885 Third Avenue
Suite 2800
New York, New York 10022
(212) 451-2900

UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
HARTFORD FIRE INSURANCE COMPANY
a/s/o Sync Sound, Inc.,                                    :        Case No. 07 CV 2998 NRB

                        Plaintiff,      :

    **-against-**                                            :        **STATEMENT PURSUANT
TO RULE 56.1
(electronically filed)**

CUSHMAN & WAKEFIELD, INC, and 444 REALTY     :
COMPANY, LLC

                     Defendant(s).  :
--------------------------------------------------------------------X
PLEASE TAKE NOTICE:

       That the defendants, CUSHMAN & WAKEFIELD, INC. and 444 REALTY COMPANY,

LLC, by their attorneys, Rosenblum Newfield, LLC, hereby set forth this Rule 56.1 Statement as

follows:

**Procedural History**

       1.     On April 16, 2007, Plaintiff filed a complaint in this matter, (Annexed as

Exhibit A), naming Cushman & Wakefield, Inc., and 444 Realty Company, LLC as Defendants.

Said complaint against 444 Realty Company LLC sounds in breach of contract and negligence.

Plaintiff's complaint against Cushman & Wakefield, Inc. sounds only in negligence.

       2.     Defendants, Cushman & Wakefield, Inc. and 444 Realty Company, LLC answered

this complaint on May 18, 2007 denying all allegations of negligence and/or breach of contract.

(Annexed as Exhibit B).  Said answer included affirmative defenses based on "Waiver of

Subrogation" and New York's Antisubrogation Rule.

**Factual Background**

       3.     Plaintiff, Hartford Fire Insurance, as subrogee of Sync Sound, seeks to

recover monies reimbursed to Sync Sound for water damage sustained by Sync Sound on August 14, 2005 allegedly as a result of a roof failure of the building located at 444-450 West 56th Street, (hereinafter referred to as the 'Building'), in which Sync Sound was a tenant.  (See Exhibit A)

4.    Plaintiff claims the damage occurred when heavy rains on August 14, 2005 resulted in substantial puddling on the Building's roof which caused a large volume of water to enter the Building and flood Sync Sound's premises, with resulting casualty.  (See Exhibit A)

5.    On October 27, 1983, Defendant, 444 Realty Company, a partnership, as landlord/owner, entered into the Original Lease Agreement, (Annexed as Exhibit C), with then named tenant, Nexus Productions, Inc., (hereinafter referred to as"Nexus"), which contained a risk sharing section entitled a 'Waiver of Subrogation' clause.  To the potential mutual benefit of each party to the lease document, it was agreed that the parties would waive any potential claims against each other for damages or loss caused by fire or other casualty, and agreed to limit their right to recovery to available insurance proceeds.

6.    Defendant 444 Realty Company, LLC was originally formed as a limited partnership under the name 444 Realty Company.  (See Exhibit D, affidavit)

7.    The named of the aforementioned limited partnership was subsequently changed to 444 Realty Company LP.  (See Exhibit D, affidavit)

8.    On or about April 10, 1997, 444 Realty Company, LP converted to a limited liability company, and changed its name to 444 Realty Company, LLC.  (See Exhibit D, affidavit)

9.    Enterprise Asset Management Inc. is the sole managing member of 444 Realty Company, LLC.  There are no employees of 444 Realty Company, LLC.  (See Exhibit D, affidavit).

10.    On or about April 10, 1973, Defendant, Cushman & Wakefield, Inc. was hired to manage the Building at 444-450 West 56th Street, which is owned by Defendant, 444 Realty Company, LLC, and continues to manage said Building to this date.  (See Exhibit D, affidavit).

11.    On November 15, 1984, Plaintiff's subrogor, Sync Sound, acquired tenant, Nexus' rights and assumed all Nexus' obligations under the Original Lease by Assignment. (Annexed as Exhibit E).

12.    The Fourth Lease Amendment dated November 13, 1989, acknowledges that Sync Sound is the tenant in question.  It also incorporates the Original Lease and all prior riders, addendum and amendments thereto.  (Annexed as Exhibit F).

13.    The lease agreement was extended in the Sixth Amendment dated August 13, 2003 and was in full effect at the time of the alleged loss.  This applicable Sixth Amendment and Lease Extension Agreement also contains a clause whereby Sync Sound agreed that 444 Realty Company, LLC, Cushman & Wakefield, Inc. (or any substitute property manager), and Enterprise Asset Management, Inc. shall be named as "additional insureds" under all required policies of insurance.  Said clause is located on page 3, paragraph 10, 'Insurance Certificate.' (Annexed as Exhibit G).

14.    Sync Sound complied with its contractual obligation to name the Defendants as additional insureds, as is evidenced by the attached Certificate of Liability Insurance.  (Annexed as Exhibit H).

15.    At the time of the subject loss, August 14, 2005, 444 Realty Company, LLC was insured for property damage by Factory Mutual Insurance Company, a/k/a FM Global.  Said insurance policy specifically names Enterprise Asset Management, Inc. as a named insured (Annexed as Exhibit I), and expressly states that said policy covers all entities under the

management, control or ownership of Enterprise Asset Management, Inc.  (Exhibit I, pg 1, paragraph 1).

16.    As reflected in Exhibit D, 444 Realty Company, LLC is under the management control of Enterprise Asset Management, Inc. and thus is also covered by the insurance policy between Enterprise Asset Management, Inc. and Factory Mutual Insurance Company.

17.  The insurance policy agreement, (Exhibit I), between Enterprise Asset Management, Inc. (which covers Defendant, 444 Realty Company, LLC) and Factory Mutual Insurance Company, permits the covered party to waive its right of recovery or subrogation.  (Exhibit I, pg 50, paragraph D).

18.    As stated above, at the time of the subject loss, Sync Sound was insured for property damage by the Hartford Fire Insurance Company.  This insurance policy, (Annexed as Exhibit J), expressly permits Sync Sound to waive its rights of recovery or subrogation against another party in the event of property loss or damage.  (Exhibit J, Property Choice Conditions and Definitions section, pg 4 of 7, ss00256).

19.    Sync Sound and 444 Realty Company, LLC mutually agreed to waive their rights to subrogation when they entered into the applicable Original Lease Agreement.  (See Exhibit C, pg ss00281).

20.    The respective insurance companies of Sync Sound and 444 Realty Company, LLC expressly permitted both parties to waive said subrogation rights.  (See Exhibits J and I).

21.    On or about April 28, 2004 Cushman & Wakefield, Inc. recommended that 444 Realty Company, Inc., obtain a roofing survey of the building located at 444-450 West 56th Street.  (See Exhibit D, affidavits)

22.    With the approval of the building owner, Cushman and Wakefield, Inc., obtained

bids from several roofing engineer companies to evaluate the roof of the subject building. (See Exhibit D, affidavits)

23.    WJE Engineers & Architects, P.C. was selected as the roofing engineer, and was given approval to commence a roof evaluation in September of 2004.  (See Exhibit D, affidavits)

24.    On or about February 14, 2005, Cushman & Wakefield, Inc. received WJE Engineers & Architects, P.C.'s roof evaluation report which recommended roof replacement in varying degrees at the subject building.  (See Exhibit D, affidavits)

25.    On or about March 9, 2005, Cushman & Wakefield, Inc. submitted to Enterprise a project management services proposal to oversee the roof replacement of the subject building. (See Exhibit D, affidavits)

26.    Shortly thereafter, Cushman & Wakefield, Inc. was informed that its project management services were not required for the roof replacement of the subject building.  (See Exhibit D, affidavits)

27.    Accordingly, Cushman & Wakefield, Inc. did not manage, oversee or facilitate any part of the recommended roof repair or replacement of the subject building.  (See Exhibit D, affidavits)

28.    All work done to select, schedule and/or expedite a roofing contractor was done by employees of Enterprise Asset Management, Inc., in its capacity as Manager of Defendant, 444 Realty Company, LLC.  (See Exhibit D, affidavits)


Dated: December 28, 2007
       White Plains, NY

Yours etc.
ROSENBLUM NEWFIELD, LLC.

 s/ James F.  Biondo
_____
James F.  Biondo / Fed Bar #JB 2429
Attorneys for Defendants
CUSHMAN & WAKEFIELD INC and
444 REALTY COMPANY, LLC
50 Main Street
White Plains, NY 10606
(914) 686-6100

TO:

Michael B. Golden, Esq.
Attorneys for Plaintiff
HARTFORD FIRE INSURANCE COMPANY
a/s/o Sync Sound, Inc
Robinson & Cole, LLP
885 Third Avenue
Suite 2800
New York, New York 10022
(212) 451-2900

UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

| | | |
|---|---|---|
| HARTFORD FIRE INSURANCE COMPANY | | |
| a/s/o Sync Sound, Inc., | : | Case No. 07 CV 2998 NRB |
| Plaintiff, | : | |
| | : | |
| **-against-** | : | **DEFENDANTS** |
| | | **MEMORANDUM OF** |
| | | **LAW** |
| | | **(electronically filed)** |
| | | |
| CUSHMAN & WAKEFIELD, INC, and 444 REALTY | : | |
| COMPANY, LLC | | |
| Defendant(s). | : | |

--------------------------------------------------------------------X

**Table of Contents**

Law and Argument                             -     2

A. Legal Standard                            -     2

B. Operative Agreements                      -     2

C.  The Incident                             -     5

D.  Choice of Law                            -     5

E.  Waiver of Subrogation                    -     6

    E1.   **Wavier of Subrogation as to
        Plaintiff's Breach of Contract
        Theory**                          -     8

    E2.   **Waiver of Subrogation as to
        Plaintiff's Negligence Count**    -     15

F.    No Genuine Issue of Material Fact
      as to Plaintiff's Negligence Claim Against
      Cushman & Wakefield, Inc.           -     19

G.  Antisubrogation Rule                     -     21

H.  Conclusion                               -     22

1

**Law and Argument**

**A.  Legal Standard**

Summary judgment must be granted when the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). When the moving party has met this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. 1348. At that point, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; Liberty Lobby Inc., 477 U.S. at 250, 106 S. Ct. 2505; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. 1348.  To withstand a summary judgment motion evidence must exist upon which a reasonable jury could return a verdict for the nonmovant.  Liberty Lobby Inc., 477 U.S. at 248-249, 106 S.  Ct.  2505, Matsushita Elec.  Indus.  Co., 475 U.S. at 587, 106 S.  Ct.  1348.  Thus, summary judgment is proper where there is "little or no evidence...in support of the non-moving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223-1224 (2d Cir.  1994).

**B.  Operative Agreements**

As evidenced in the Original Lease Agreement, (See Exhibit C), and subsequent controlling Lease Amendment incorporated by reference, (See Exhibit F), tenant, Sync Sound,

and owner/landlord, 444 Realty Company, LLC, mutually agreed to waive their respective rights

of recovery via subrogation.  The pertinent waiver of subrogation language found in the Original

Lease Agreement (Exhibit C, SS 00281), beginning 18 lines from the bottom of paragraph 9 of

the lease, follows:

> (9) Property Damage - Reimbursement - Indemnity
>
> (c ) Nothing contained hereinafter shall relieve Tenant from
> liability that may exist as a result of damage from fire or
> other casualty.  Notwithstanding the foregoing, each party
> shall look first to any insurance in its favor before making
> any claim against the other party for recovery for loss or
> damage resulting from fire or other casualty, and to the
> extent that such insurance is in force and collectible and to
> the extent permitted by law, Landlord and Tenant each
> hereby releases and waives all right of recovery against the
> other or anyone claiming through or under each of them by
> way of subrogation or otherwise.  The foregoing release and
> waiver shall be in force only if both releasors' insurance
> policies contain a clause providing that such a release or
> waiver shall not invalidate the insurance and also, that such
> a policy can be obtained without additional premiums.
> Tenant acknowledges that Landlord will not carry insurance
> for Tenant's furniture and/or furnishings or any fixtures or
> equipment, improvements, or appurtenances removable by
> Tenant, and agrees that Landlord not be obligated to repair
> any damage thereto or replace the same.

Plaintiff, Hartford Fire Insurance, issued an insurance policy, 'Property Choice Policy' to

Sync Sound with effective dates of August 21, 2004 through August 21, 2005, (See Exhibit J).

Said policy insured against damage or loss to insured's business personal property and rented real

property.  Also provided within the policy is an express provision permitting the insured, Sync

Sound, to waive rights of subrogation.  The specific provision is located within Exhibit J, page 4

3

of 7 (alternatively, referred to as page, SS00256), of the "Property Choice Conditions and

Definitions" section, section 'A' *General Conditions*, paragraph 20:

> 20. Transfer of Rights of Recovery Against Others To Us (Subrogation)
>
> If any person or organization to whom or for who we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But, you may waive your rights against another party in writing:
>
> a.       Prior to a covered loss or damage, or
>
> b.       After a covered loss only if, at time of loss, that party is one of the following:
>
> > (1) Someone insured by this insurance;
> >
> > (2) A business firm that you own or control;
> >
> > (3) A business firm or individuals, that owns or controls you; or
> >
> > (4) Your tenant.
>
> This written waiver will not restrict your insurance.

The Property Insurance policy issued by Factory Mutual Insurance Company to Enterprise

Asset Management, (See Exhibit I), covering defendant, 444 Realty Company LLC, provided

similar language. The provision is located within Exhibit I, pg 50, within Section D, *Loss*

*Adjustment and Settlement,* under subsection (4) *Loss Conditions*, paragraph D, *Subrogation*:.

> D.      SUBROGATION
>
> The Insured is required to cooperate in any subrogation proceedings. The Company may require from the Insured an assignment or other transfer of all rights of

4

recovery against any party for the loss to the extent of the
Company's payment.

 The Company will not acquire any rights of recovery
that the Insured has expressly waived prior to a loss, nor will
such waiver affect the Insured's rights under this Policy.

 Any recovery from subrogation proceedings, less
costs incurred by the Company in such proceedings, will be
payable to the Insured in the proportion that the amount of:

1) Any applicable deductible; and/or

2) Any provable uninsured loss, bears to the entire provable
loss amount.

As required by the Original Lease Agreement, Hartford Fire Insurance, insurer for tenant

Sync Sound, and Factory Mutual Insurance, insurer for landlord/owner 444 Realty Company,

LLC, allowed the respective parties to waive their right to pursue subrogation.  Further, as also

required by the lease agreement, both policies expressly permitted such waivers without

restrictions on the insureds' coverage under the policies.

**C.  The Incident**

According to Plaintiff's Complaint (Exhibit A), the Hartford Fire Insurance Company

paid out insurance monies to its insured Sync Sound, Inc. as a result of water damage sustained

to Sync Sound's rented space and personal property.  The incident occurred on August 14, 2005,

within a building located a 444-450 West 56th Street, New York, New York.

**D.  Choice of Law**

The situs of the action and the property in question is the building located at 444-450

West 56th Street, New York, New York, and as such, New York state substantive law

5

applies. "With respect to interstate contractual obligations, we have emphasized that parties who reach beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985).  "[T]he law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." Padula v. Lilarn Properties Corp., 84 N.Y.2d 519, 644 N.E.2d 1001, 620 N.Y.S.2d 310 (1994).

## E.  Waiver of Subrogation

It has been held that, subrogation is "an equitable doctrine [that] allows an insurer to stand in the shoes of its insured and seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse.  Kaf-Kaf, Inc. v. Rodless Decorations, Inc., 90 N.Y. 2d. 654, 660, 687 N.E. 2d 1330 (1997). The "parties to an agreement may waive their insurer's right of subrogation . . ." Id. at 660.  However, it is admitted that a waiver of subrogation clause may only be enforced to the extent to which it appears in the agreement.  Id. at 660.  Contracting or leasing parties often choose to include such a waiver in their contracts being that they prefer to "look to their respective insurers for recovery of certain losses, and release any right of recovery either party--or its subrogated insurer–might have against the other party."  Kaf-Kaf, Inc., 687 N.E.2d at 1333; Gap, Inc. v. Red Apple Cos., 282 A.D.2d 119, 725 N.Y.S.2d 312, 316 (App.Div. 2001).  Waiver of subrogation clauses have been

6

upheld and followed by the New York State Courts, as well as the United States District Court for the Southern District of New York and the United States Court of Appeals for the Second Circuit. Indian Harbor Insurance Company, as subrogee of George Lax, d/b/a VP 57, LLC v. Dorit Baxter Skin Care, 430 F. Supp. 2d 183 (S.D.N.Y. 2006)(applying NY law); Atlantic Mut. Ins. Co. v. Elliana Properties, 691 N.Y.S. 2d 412, 261 A.D. 2d 296 (1st Dept., 1999); Kaf-Kaf, Inc. v. Rodless Decorations, Inc., Supra; Farmington Cas. Co. v. Williams Real Estate Co., 225 F.3d 645 (2d Cir., 2000)(applying NY law); St. Paul Fire and Marine Insurance Co. v. Universal Builders Supply, et al., 409 F.3d 73 (2d Cir., 2005)(applying NY law); General Acc. Ins. Co. v. 80 Maiden Lane Assoc., 675 N.Y.S.2d 85, 252 A.D. 2d 391 (1st Dept., 1998).

Most recently was the case of Indian Harbor, Supra, a case directly on point with the instant action, where the Federal Court for the Southern District of New York, applying New York Law, addressed this very issue and granted defendant's motion for summary judgment based on the waiver of subrogation clause in the parties' lease. Plaintiff/insurer, sought to recover insurance proceeds paid to its insured, landlord/owner, for property damage incurred after a fire was started on the floor occupied by defendant/tenant, under theories of negligence, gross negligence and breach of contract. As in the instant matter, both landlord/owner and tenant in Indian Harbor had waived their rights to subrogation by way of the lease agreement. Their respective insurance policies allowed for such waiver or release. As such, the Court in Indian Harbor upheld the 'Waiver of Subrogation' clause, as to all of plaintiff's counts.

7

**E1 - Wavier of Subrogation as to Plaintiff's Breach of Contract Theory**

With regard to the Breach of Contract claim, Plaintiff Hartford Fire Insurance is expressly barred from recovery by way of the waiver of subrogation clause of the lease signed by its insured, Sync Sound, Inc., and by way of Hartford Fire's own insurance agreement with Sync Sound. As previously noted, the Breach of Contract count is only directed to Defendant 444 Realty Company, LLC.  Breach of Contract is not alleged as to Cushman & Wakefield, Inc.  In the 2006 Southern District of New York case of Indian Harbor Ins. Co, v. Dorit Baxter Skin Care, Inc., Supra, which was following precedent of the United States Court of Appeals for the Second Circuit in  St. Paul Fire and Marine Insurance Co. v. Universal Builders Supply, et al., Supra, the Court granted the moving party's motion for summary judgment dismissing the Breach of Contract claims in a waiver of subrogation case.

In Indian Harbor, it was alleged that the defendant/tenant breached the lease contract by improperly using a Maytag dryer and by installing a soffit or partial partition which blocked the fire suppression sprinkler system (which prevented the stream of water from reaching the fire), all in contravention of the terms of the lease agreement/contract.  It was alleged that these breaches of the lease agreement directly caused the subject property damage.  Indian Harbor, Supra at 185. Said lease agreement contained a waiver of subrogation clause, which stated:

> Landlord and Tenant, respectfully, hereby waive the right to recover from each other any damage or loss occasioned by hazards compensated by insurance (excluding liability insurance), regardless of whether said damage

8

or loss resulted from the negligence of either party, their officers, employees, agents or otherwise and said parties do hereby waive the right to subrogate any insurance carrier or other party to their respective rights of recovery against each other in any event.  Id.

Plaintiff/landlord in Indian Harbor argued that the defendant/tenant "should be foreclosed from enforcing the waiver-of-subrogation clause because defendant previously breached the lease by first installing the dryer and then installing the soffit that blocked the sprinkler, without first obtaining [landlord's] prior permission pursuant to the terms of the Lease." Id. at 191.  The Court rejected this argument stating that the question to be answered was "whether defendant can enforce a particular term in a lease–a particular form of contract–if defendant previously breached another term of the lease." Id.  That is, was the parties' lease agreement to waive subrogation against each other dependent on the defendant/tenant's compliance with its covenant not to make any structure alterations or installations without first receiving the landlord's permission?  To start, the Court concluded that the lease did not "contain any express statement conditioning the enforcement of the waiver-of-subrogation clause on defendant's performance of any other covenant." Id., at 193.  Secondly, the Court held that the two provisions of the lease (ie., waiver of subrogation and no alterations without prior written approval) were independent of each other. There was no intent of the parties to "condition the enforcement of the . . . waiver of subrogation clause on defendant's covenant to obtain [landlord's] prior written permission before altering the premises." Id., at 193.  The Court contrasted the situation in Indian Harbor, to that of a prior New

9

York State case, Liberty Mutual Insurance Co. v. Perfect Knowledge, Inc., 752 N.Y.S.2d 677, 299

A.D.2d 524 (2002), in which the New York Court "declined to enforce a waiver-of-subrogation

provision where the tenant-defendant had breached its lease by failing to procure liability

coverage pursuant to the lease's terms. The Court found that, given a waiver-of-subrogation

provision is part and parcel of a risk allocation agreement under which the parties shift any

prospective liability to their respective insurers, a party's failure to procure the necessary

insurance frustrates entirely the nature of the scheme: Without the procurement of insurance, the

shifting envisioned under the agreement could not take place, and the agreement was frustrated."

Indian Harbor, 430 F. Supp.2d at 193 (internal citations omitted). Lastly, the Court held that

"plaintiff's covenant [in Liberty Mutual Insurance Co.] to waive its insurer's subrogation rights

against defendant was dependent on its being able to recover damages from its insurer in the first

place." Id., at 193-194. There was no such connection present in the lease clauses in Indian

Harbor. In concluding that the Breach of Contract claim was barred by the waiver of subrogation

clause, the Court in Indian Harbor held:

> While the Court recognizes that some courts have found certain waiver-of-
> subrogation clauses to only preclude subrogation actions for negligence, but
> not breach of contract, the Court believes that the subject clause does not so
> differentiate. First, the plain meaning of the terms of the clause, which bars
> claims for "any damage or loss occasioned by hazards compensated by
> insurance," distinguishes it from those cases in which only tort actions were
> found to be barred. Second, this finding accords with the Second Circuit's
> interpretation of a similarly worded provision in St. Paul Fire & Marine
> Insurance Co. v. Universal Builders Supply, 409 F.3d 73 (2d Cir. 2005)
> (Kearse, J.). In that case, the Second Circuit found that the waiver-of-

10

subrogation clause in question barred plaintiff's claims grounded in
negligence, gross negligence, and breach of contract; Id at 194.

In St. Paul Fire, Supra, plaintiff/building owner entered into a contract with a construction

company for the completion of certain work on a New York building.  Said contract contained a

waiver of subrogation clause, wherein the contractual parties decided to waive their respective

rights of subrogation as against the other.  Id., at 77.  During the construction process there was an

incident, with resulting property damages totaling twenty million dollars.  The building owner

filed a claim with its insurance company, which paid out approximately nineteen million dollars

in insurance proceeds.  Id., at 78.  The owner's insurance company commenced a subrogation

action against the construction company, alleging negligence, gross negligence and breach of

contract.  The construction company answered and asserted an affirmative defense alleging that

the action was barred by way of the waiver of subrogation provision of the contract.  The Court

granted the defendants' motion to dismiss all counts of negligence, gross negligence and breach of

contract, going so far as to state that there was not even evidence that there was a breach of

contract. Id., at 84-85.  The Court stated that "waiver of subrogation provisions are intended to cut

down the amount of litigation that might otherwise arise due to the existence of an insured loss. . .

Such waivers are commonplace." Id., at 84 (Internal quotations and citations omitted).

In the instant action, Plaintiff's insured, Sync Sound, and the Defendant, 444 Realty

Company, LLC, entered into a written risk sharing agreement, which specifically and broadly

11

states that "each party shall look first to any insurance in its favor before making *any claim*

against the other party for recovery for loss or damage resulting from fire or other casualty, and

to the extent that such insurance is in force and collectible, . .. Landlord and Tenant each hereby

releases and waives all right of recovery against the other or anyone claiming through or under

each of them by way of subrogation or otherwise."  (See Exhibit C, SS00281)(emphasis added).

As was held in <u>Indian Harbor</u>, "[p]receding 'damage or loss' with the word 'any', which means

'one selected without restriction,' demonstrates an intent to have the provision encompass all

claims of any kind, provided it is compensable by insurance."  <u>Id.</u>, at 190 (internal citations

omitted."  The Court went on to state that "[t]o argue that additional language, which enunciates

the applicability of the clause to negligence claims, means–or even implies–that it is inapplicable

to breach of contract or gross negligence claims would require reading into the Lease terms the

parties did not include themselves.  The class of claims for which the parties' rights of

subrogation are waived is clear: The claim need only arise from a hazard compensated by

insurance."  <u>Id.</u>, at 191.  This is what the parties envisioned in drafting the Original Lease

Agreement.  If a limitation were desired by the parties, the words  "any claim" would not have

been used, and would instead have been replaced by limiting language.  This was not done,

because the parties to the lease did not so intend.  "In interpreting a contract under New York law,

words and phrases . . . should be given their plain meaning, and the contract should be construed

so as to give full meaning and effect to all of its provisions."  <u>LaSalle Bank Nat'l Ass'n v,</u>

12

Nomura Asset Capital Corp., 424 F.3d 195, 206 (2d Cir., 2005), quoting Shaw Group, Inc. v. Triplefine Int'l Corp., 322 F3d. 115, 121 (2d Cir., 2003).

Following the lease terms, Sync Sound first looked to its property insurance company, Hartford Fire, to cover its losses associated with the aforementioned water intrusion casualty. According to Plaintiff's complaint, Hartford Fire paid Sync Sound's claim, thus we know the insurance was in force and collectible. As such, the underlying incident was a casualty that was within class of claims for which the parties' right of subrogation was waived: The claim arose from a hazard which was compensated by insurance. As the claim fit within the necessary class of claims (ie., to which the claim was covered by insurance), plaintiff's subrogation action should be barred.

In accordance with the Original Lease Agreement, the insurance policies of both Sync Sound and 444 Realty Company LLC permitted a prior waiver of subrogation. Thus further evidence of the parties desire to be bound thereby.

Also, following the holding and rational of the Court in Indian Harbor, the waiver of subrogation clause is not in any way dependent upon the alleged duty to maintain the exterior of the subject building. If the clauses are "independent, one party's performance of its obligations under the lease is not conditioned or dependent upon the other party's compliance with the other provisions of the lease." Indian Harbor, Supra at 193. There is nothing in the lease terms which would suggest that the building owner's obligation to maintain the building exterior was a

13

condition precedent to the enforcement of the waiver of subrogation clause. This would hold true upon reading the clause in question, or the document as a whole.

The instant case can also be distinguished from that of <u>Liberty Mutual Insurance Co. v. Perfect Knowledge</u>, Supra. As was previously argued, the alleged breach of contract in <u>Liberty</u> was part-and-parcel with the waiver of subrogation clause. Without the procurement of the necessary insurance (the alleged breach), the risk shifting envisioned under the waiver of subrogation clause could not take place, and the agreement was frustrated as a whole. This is not the case in the instant action. As in <u>Indian Harbor</u>, there is no such connection between the contract provisions in this case. As the clauses are not dependent upon each other, the alleged breach of contract in this action has no bearing upon the parties desire to prohibit lawsuits in this type of situation, and as such the action should be barred.

To conclude on this point, Sync Sound and 444 Realty Company, LLC entered into a written contract (the Original Lease Agreement) whereby they each desired a broadly applied risk sharing provision, which would prevent time consuming and costly litigation of disputes. The parties drafted and signed a waiver of subrogation clause which limited their right of recovery for *'any claim'* to available insurance proceeds, provided that such insurance was in effect and collectable, and provided that said insurance policy specifically permitted waiver of subrogation. We know that the insurance policies of both Sync Sound and 444 Realty permitted waiver of subrogation. We also know that Sync Sound's policy of insurance with Hartford Fire was in force

14

and the claim was paid.  It is also clear that the clause providing for waiver of subrogation is not

dependent upon the alleged breach of contract in this action.  Thus, as a matter of law, Plaintiff's

breach of contract count should be barred/dismissed.

### E2 - Waiver of Subrogation as to Plaintiff's Negligence Count

Plaintiff's complaint alleges Negligence as against both defendants, however, it is clear

that this count is barred by the Original Lease Agreement and subsequent amendments.  444

Realty Company, LLC is a party to these agreements, and Cushman & Wakefield, Inc. was at all

times acting as the managing agent for 444 Realty Company, LLC.  The protection extended to

the named lease parties should also extend to Cushman & Wakefield, Inc.  See, General Accident

Ins. Co., v. 80 Maiden Land Assoc., 675 N.Y.S. 2d 85, 86 252 A.D.2d 391 (1998); Farmington

Cas. Co. v. Williams Real Estate co., 225 F.3d 645 (2d Cir., 2000).

Though Defendant, Cushman & Wakefield, Inc. is not specifically named in the waiver of

subrogation provision of the Original Lease Agreement, "a reading of the lease, as a whole,

demonstrates that it was the intent of the parties to the lease that both the landlord...and the

management company...be protected equally." Insurance Company of North America v. Borsdorff

Services, Inc.  et al, 225 A.D.2d 494, 639 N.Y.S. 2d 816, 817 (1996) citing, Pilsener Bottling Co.

v.  Sunset Park Indus.  Assoc., 201 A.D.2d 548 (1994).  "A reading of the entire lease illustrates

that the parties intended to include agents or employees within the meaning of the term

'Landlord,' under the subrogation-waiver clause of lease.  It appears that the parties anticipated

15

that the landlord would operate through employees, agents or servants." Pilsener Bottling Co. at

549. (cf., Howard v. Finnegans Warehouse Corp. 33 A.D.2d 1090 (1970); Federal Ins. Co. v.

Zwicker Elec. Co., 144 A.D.2d 632 (1988)). As previously discussed, Defendant, Cushman &

Wakefield, Inc. at the time of the alleged incident, was the managing agent for the Building in

question. (See Exhibit D, affidavits). Tenant, Sync Sound and Defendant, 444 Realty Company,

LLC also contracted to name Defendant, Cushman & Wakefield, Inc. as an Additional Insured

under the additional required policies of insurance. (See Exhibit G, pg 3, paragraph 10 of the

Sixth Lease Amendment and Exhibit H, Certificate of Insurance). It can therefore be inferred that

the parties were aware and it was their intent to include Defendant, Cushman & Wakefield, Inc.

as the agent for Landlord, 444 Realty Company, LLC, under the Original Lease Agreement and

Amendments thereto. Following are paragraphs from the Original Lease Agreement referencing

"the Landlord and Landlord's agent." The paragraphs provided are not exhaustive, but

representative of the agency language incorporated throughout the lease document.

> Exhibit C, Original Lease Agreement, pg ss00281,
> Paragraph 8, Property Damage Reimbursement:
>
> "Landlord or its agents shall not be liable for any damage to
> property of Tenant or of others entrusted to employees of the
> building, nor for loss of or damage to any property of Tenant
> by theft or otherwise, nor for any injury or damage to
> persons or property resulting from any cause of whatsoever
> nature..."
>
>  pg ss00281, Paragraph 13, Access to Premises: "Landlord
> or Landlord's agents shall have the right, (but shall not be
> obligated), to enter the demised premises in any emergency
> at any time, and, at other reasonable times, to examine the

same and to make such repairs, replacements,improvements as Landlord may deem necessary and reasonable...Landlord or Landlord's agents may enter the same whenever such entry may be necessary or permissible by master key or forcibly and provided reasonable care is exercised to safeguard Tenant's property..."

ss00283, Paragraph 24, Waivers: "No act or thing done by Landlord or Landlord's agents during the term hereby demised shall be deemed a surrender of said premises and no agreement to accept such surrender shall be valid unless in writing signed by Landlord."

ss00284, Paragraph 35, Rules and Regulations: "Tenant and Tenant's servants, employees, agents, visitors, and licensees shall observe faithfully, and comply strictly with, the Rules and Regulations and such other and further reasonable Rules and Regulations as Landlord or Landlord's agents from time to time may adopt."

Plaintiff, Hartford Fire, claims 444 Realty Company, LLC and Cushman & Wakefield, Inc. were negligent in their maintenance of the roof of the building.  Said claims are barred by the waiver of subrogation provision contained within the Original Lease Agreement.  The exact waiver of subrogation clause found within the instant case, can also be found, word-for-word, in the Kaf-Kaf, Inc., v. Rodless Decorations, Inc., 90 N.Y. 2d. 654, 658, 687 N.E. 2d 1330, 1332 (1997).  In that case, the property damage insurance polices of both landlord and tenant also contained provisions which permitted waiver of subrogation.  Id., at 659.  In enforcing the waiver of subrogation clause, and dismissing the action, the Court went on to hold that "this broad, plainly stated provision encompasses not only [landlord's] claims for damage to the demised

17

premises and loss of rent but also [tenant's] claims for personal property damages and business

interruption losses." <u>Id.</u> At 660.  Lastly, the Court stated that the "waiver provision . . . reflects

the parties' intension to look first to their insurers for recovery of losses sustained through

'Destruction, Fire and Other Casualty,' and to release any right of recovery against the other or

any one claiming through or under each of them by way of subrogation or otherwise." <u>Id.</u>

"While traditionally it has been unquestioned that under New York law a waiver of subrogation

clause is enforceable against claims for losses resulting from another party's negligence, the

Second Circuit recently held that a waiver of subrogation clause is also enforceable against

claims for losses resulting from even another's gross negligence." <u>Indian Harbor Ins. Co. v.</u>

<u>Dorit</u>, 430 F. Supp 2d at 189, citing  <u>St. Paul Fire and Marine Insurance Co. v. Universal</u>

<u>Builders Supply, et al.</u>, 409 F.3d at 85-87.  Gross negligence is not plead in this action, but if it

were, it too would be subject to the waiver of subrogation clause.  As long as the insureds' loss is

compensated by the insurance policy without restriction, and that party is not deprived of

recovery from the loss, there should be a presumption of immunity for the other party.  Both

parties contractually agreed to first look to their respective insurance policies to recover in the

event of loss or damage.  The mutual agreement was permitted by the parties' insurers and

therefore should not be circumvented or undermined.

Public policy drives the theory of recovery here: a loss occurred, the party involved

turned to its own insurance policy for compensation to cover its losses as it agreed it would do,

and that insurer, finding the losses arose from a hazard or casualty expressly outlined in the

policy, duly compensated the party for its losses.  If said insurers then turn around and seek

to recover the money paid out to their insureds through litigation, the legal costs and fees

incurred and potential liability damages owed, will then inevitably be passed off to the very

insureds who contracted to avoid such action in the first place.  This is what the drafters of the

waiver of subrogation provision were determined to prevent.

**F.  No Genuine Issue of Material Fact as to Plaintiff's Negligence Claim Against Cushman & Wakefield, Inc.**

Even if this Court were not enforce the waiver of subrogation clause as to the building

owner's agent, Cushman & Wakefield, Inc., there is no genuine issue of material fact to which a

Jury or Court could conclude that it was negligent.  As has been demonstrated in the Rule 56.1

Statement of Facts, in the Spring of 2004 Cushman & Wakefield, Inc. recommended that 444

Realty Company, LLC retain a roofing engineer to inspect the subject roof.  With the approval of

the building owner, Cushman and Wakefield, Inc., obtained bids from several roofing engineer

companies to evaluate the roof of the subject building.  WJE Engineers & Architects, P.C. was

selected as the roofing engineer, and was given approval to commence a roof evaluation in

September of 2004.  On or about February 14, 2005, Cushman & Wakefield, Inc. received the

WJE Engineers & Architects, P.C. roof evaluation report which recommended roof replacement

in varying degrees.  On or about March 9, 2005, Cushman & Wakefield, Inc. submitted to

Enterprise a project management services proposal to oversee the roof replacement of the subject

building.  Shortly thereafter, Cushman & Wakefield, Inc. was informed that its project

management services were not required for the roof replacement of the subject building.

Accordingly, Cushman & Wakefield, Inc. did not manage, oversee or facilitate any part of

the recommended roof repair or replacement.  All work done to select, schedule and/or expedite a

roofing contractor was done by employees of Enterprise Asset Management, Inc., in its capacity

as Manager of Defendant, 444 Realty Company, LLC.  Plaintiff's claim focuses upon the fact

that the building owners and managing agent were aware that the roof needed replacement as of

at least February 14, 2005, but failed to fix or replace the roof before the loss of August 14, 2005.

While Cushman & Wakefield, Inc. was certainly aware of the roof replacement recommendation

made by WJE Engineer & Architects, is was specifically told by the building owners that its

services were not needed/required, as the project was going to be managed 'in house." (See

Exhibit D, affidavits)  Being that Cushman & Wakefield, Inc., played no role in obtaining bids

from roofing contractors, selecting a contractor, or in scheduling a work start date, it can under

no circumstances be found negligent.  As the building manager for the owners, Cushman &

Wakefield, Inc. could only do what it was required to do under contract.  As their proposal to

manage the roof job was rejected, it took no further action with regard to the subject roof.  Thus,

it is respectfully submitted that summary judgment should be granted as to Cushman &

Wakefield, Inc., as the pleadings, affidavits and documents show that there is no genuine issue as

20

to any material fact, and that it is entitled to judgment as a matter of law.

**G.  As The Defendants are Named Insureds Under the Hartford Policy, New York's Antisubrogation Rule Bar's This Action.**

While subrogation is an accepted cause of action within New York, there is an exception

to its application entitled the Antisubrogation Rule.  Said rule is applicable in this case, and is a

bar to this action.  As is mentioned in the Rule 56.1 Statement, and evidenced by Exhibit H, the

Defendants 444 Realty Company, LLC and Cushman & Wakefield, Inc., are named as additional

insureds under the Hartford Fire policy of insurance.  As was held in ELRAC, Inc. v. Gladys

Ward, et. al., 96 N.Y.2d 58, 76, 748 N.E.2d 1 (2001):

> There is, however, an exception to the right of subrogation, termed the
> antisubrogation rule. Under that rule, an insurer has no right of
> subrogation against its own insured for a claim arising from the very risk
> for which the insured was covered even where the insured has expressly
> agreed to indemnify the party from whom the insurer's rights are derived.
> In other words, an insurer may not step into the shoes of its insured to sue
> a third-party tortfeasor–if that third party also qualifies as an insured
> under the same policy--for damages arising from the same risk covered by
> the policy. This rule applies even if the third-party tortfeasor has
> expressly agreed to indemnify the insured for the loss.  The purpose of
> this rule is to prevent an insurer from using the right of subrogation to
> avoid paying coverage that is due under the policy. Additionally, the
> antisubrogation rule limits the instances in which an insurer and its
> insured have adverse interests, which might undercut an insurer's
> incentive to provide a vigorous defense to its insured.  (Internal citations
> and quotations omitted.)

As was also held in Jefferson Insurance Company of NY v. Travelers, 92 N.Y.2d 363, 365, 703

N.E.2d 1221 (1998), "[t]he antisubrogation rule limits an insurer's right of subrogation where the

insurer seeks a claim in subrogation against its own insured on the very claim for which the

21

insured was covered."  In this case, Hartford Fire has brought suit against two of its additional insureds, in violation of this rule.  Plaintiff's insured (Sync Sound), had the Defendants named as additional insureds pursuant to the terms of the Original Lease Agreement and its subsequent amendments.  Despite this, plaintiff is seeking recovery from one of its own insureds.  This is not permissible, and the claims should be barred.

**H.  Conclusion**

In the instant matter, the 'Waiver of Subrogation' clause in the Lease is unambiguous and broad.  It precludes either party from recovering by way of subrogation from any 'loss or damage from fire or other casualty', irrespective of that claim being one of breach of contract or negligence.  "New York courts, when enforcing waivers of subrogation, look to the specific terms of the waiver as executed by the parties."  Kaf-Kaf, Inc. v.  Rodless Decorations, Inc., 90 N.Y.2d at 658.  The parties to this action obtained property damage insurance which specifically permitted waiver of subrogation.  The plaintiff's insured in the instant action (Sync Sound) made a claim under its insurance policy for the loss.  Said claim arose out of the precise 'casualty' as provided for in the Original Lease Agreement, and Plaintiff's insured  received compensation for the claim made.  As such, the waiver of subrogation clause should be enforced.  Even absent the waiver of subrogation clause, Defendant Cushman & Wakefield, Inc. is entitled to judgment, as there is no material evidence of negligence pertaining to them.

Additionally, Plaintiff's action is barred by way of New York's Antisubrogation Rule and the action should be dismissed.  The Defendants are named as additional insureds under the

22

Hartford policy.  Thus the Antisubrogation Rule prohibits this action.

WHEREFORE, Defendants CUSHMAN & WAKEFIELD, INC and 444 REALTY

COMPANY, LLC respectfully request that the Court grant an Order pursuant to Rule 56 of the

Federal Rules of Civil Procedure granting summary judgment in favor of Defendants

CUSHMAN & WAKEFIELD, INC and  444 REALTY COMPANY, LLC and dismissing the

Complaint as against these Defendants and for such other further relief that this Court deems just

and proper.


Dated: White Plains, New York
       December 28, 2007


                        Yours etc.,
                        ROSENBLUM NEWFIELD, LLC
                         s/ James F.  Biondo

                        _____

                        James F.  Biondo / Fed Bar #JB 2429
                        Attorneys for Defendants
                        CUSHMAN & WAKEFIELD INC and
                        444 REALTY COMPANY, LLC
                        50 Main Street
                        White Plains, NY 10606
                        (914) 686-6100


                                    23

UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
HARTFORD FIRE INSURANCE COMPANY
a/s/o Sync Sound, Inc.,                                        :         Case No. 07 CV 2998 NRB
                                                                                  (electronically filed)
                                                Plaintiff,            :

        -against-                                                      :


CUSHMAN & WAKEFIELD, INC, and 444 REALTY            :
COMPANY, LLC
                                                Defendant(s).      :
-------------------------------------------------------------------X


## CERTIFICATE OF SERVICE

        I hereby certify that on 28 December 2007 the Notice of Motion for Summary Judgment,

Statement 56.1 with supporting documents, and Memorandum of Law, were filed with the Clerk

of the Court and served in accordance with the Federal Rules of Civil Procedure, and /or the

Southern District Court's Local Rules, and / or the Southern District Court's Rules on Electronic

Service upon the following parties and participants.

Dated:  December 28, 2007
            White Plains, NY



                                        s/ James F.  Biondo
                                        _____


TO:     Michael B.  Golden, Esq.
            Plaintiff's Attorney
            Robinson & Cole, LLP
            885 Third Avenue
            Suite 2800
            New York, NY 10022
            (212) 451-2900