# EXHIBIT A



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HARTFORD FIRE INSURANCE COMPANY a/s/o Sync Sound, Inc.,

Plaintiff,

-against-

CUSHMAN & WAKEFIELD, INC. and 444 REALTY COMPANY, LLC,

Defendants.

Case No. ___ Civ. ___ ( )

COMPLAINT

**Jury Trial Demanded**

RECEIVED APR 16 2007 S.D. N.Y. CASHIERS

Plaintiff, Hartford Fire Insurance Company, by its attorneys Robinson & Cole LLP, as and for its complaint against the defendants alleges as follows:

**Background**

1. This is a subrogation action by plaintiff Hartford Fire Insurance Company ("Hartford"), the first party property insurer of Sync Sound, Inc. ("Sync Sound").

2. Hartford has paid to Sync Sound a total of $427,975.58 in connection with the loss sustained by Sync Sound on August 14, 2005 arising out of substantial water damage caused by a leaky roof in the building in which Sync Sound was a tenant (the "Loss").

3. This action is brought against Sync Sound's landlord and owner of the building, 444 Realty Company, LLC, and the managing agent of the building, Cushman & Wakefield, Inc., for their failure to repair what they knew was a faulty roof before the flood occurred.

4. In addition to the $427,975.58 paid by Hartford, Sync Sound incurred a deductible of $1,000, and therefore the total amount sought in this action is the sum of the two, or $428,975.58.

**Jurisdiction and Venue**

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 as the action is between citizens of different states, and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(a).

**The Parties**

7. At all relevant times herein, Hartford was and still is a corporation organized under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut.

8. Hartford was the first party property insurer of Sync Sound under policy no. 10 UUN UU5986 which covered the period August 21, 2004 through August 21, 2005 (the "Policy").

9. Pursuant to the Policy and relevant law Hartford, having paid amounts pursuant to the Policy in connection with the Loss, is subrogated to all of Sync Sound's rights and is entitled to pursue claims against parties which may have caused or been responsible for the Loss.

10. At all relevant times, Sync Sound occupied the first floor in a four story building ("Building") which was owned by defendant 444 Realty Company, LLC ("444 Realty").

11. Upon information and belief, at all relevant times herein, defendant 444 Realty was and is still is a corporation organized duly organized and existing under the laws of State of New York with its principal place of business in New York City.

12. Upon information and belief, and at all relevant times herein, defendant Cushman & Wakefield, Inc. ("Cushman & Wakefield") was the managing agent for 444 Realty.

13. Upon information and belief, and at all relevant times herein, Cushman & Wakefield was and still is a corporation duly organized and existing under the laws of the State of New York with its principal place of business in New York City.

**The Loss**

14. Prior to the flood, which occurred on August 14, 2005, both defendants were aware that the Building's roof was defective, that it had been leaking and that large portions of the roof needed to be replaced.

15. Upon information and belief, prior to November 16, 2004, there were various leaks in the roof of which defendants were aware, and because of these preexisting problems, defendants retained the engineering firm of WJE Engineers & Architects, PC ("WJE") to perform an examination of the roof.

16. On November 16, 2004, WJE commissioned a so-called infrared survey, performed by the firm of Jersey Infrared Consultants, which survey identified a number of wet areas on the roof, i.e. areas where the roofing has been damaged by a lack of water tightness.

17. Despite this clear evidence that the roof required extensive repairs, neither of the defendants did anything to address the situation.

18. Rather, because of the heavy rains on August 14, 2005, substantial puddling developed on the roof, and eventually a large volume of water entered through one or more areas of the defective roof membrane and flooded Sync Sound's premises.

19. The resulting damage included among other things, water damage to three sound recording studios, an equipment room, workshop and reception area, and four sophisticated electronic sound recording mixers suffered varying degrees of water damage.

**First Claim for Relief Against both Defendants**
**(Negligence)**

20. Hartford repeats and realleges the allegations contained in paragraphs 1 through 19 as though fully set forth at length herein.

21. The defendants had a duty of reasonable care to insure that the roof of the Building was water tight and would not allow water entry which might damage the premises of any of the Building's tenants.

22. The defendants, through their agents, servants, representatives and employees, breached their duty of reasonable care by failing to repair the roof notwithstanding that defendants were on notice of the roof's defective condition many months prior to the Loss.

23. Defendants' conduct was the direct and proximate cause of the Loss.

24. To-date, Hartford has been damaged in the amount of $427,975.58, the amount it paid to Sync Sound, and additionally Hartford is entitled to recover Sync Sound's $1,000 deductible, which total $428,975.58 in damages.

**Second Claim for Relief Against 444 Realty**
**(Breach of Contract)**

25. Hartford repeats and realleges the allegations contained in paragraphs 1 through 24 as though fully set forth at length herein.

26. Sync Sound is the assignee of a lease with 444 Realty dated October 27, 1983.

27. Among other things, the lease requires 444 Realty to properly maintain the common areas of the Building, including the roof.

28. Paragraph 4 of the lease reads in pertinent part:

> Landlord shall maintain and repair the public portions of the building, both exterior and interior.

29. Defendant 444 Realty breached the lease insofar as it failed to maintain the roof of the Building.

30. To-date, Hartford has been damaged in the amount of $427,975.58, the amount it paid to Sync Sound, and additionally Hartford is entitled to recover Sync Sound's $1,000 deductible, which total $428,975.58 in damages.

WHEREFORE, the plaintiff demands judgment as follows:

I. On the first claim for relief, the amount of $428,975.58 against the defendants jointly and severally, plus interest from August 14, 2005;

II. On the second claim for relief, the amount of $428,975.58 against defendant 444 Realty, plus interest from August 14, 2005;

III. The costs and disbursements of this action; and

IV. Such other and further relief as to this Court may seem just and proper.

Dated: New York, New York
April 13, 2007

ROBINSON & COLE LLP

BY: [signature]

MICHAEL B. GOLDEN (MB-0633)
Attorneys for Plaintiff
885 Third Avenue
Suite 2800
New York, New York 10022
212-451-2900

# EXHIBIT B

UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

HARTFORD FIRE INSURANCE COMPANY a/s/o Sync Sound, Inc.,

Plaintiff,

-against-

CUSHMAN & WAKEFIELD, INC, and 444 REALTY COMPANY, LLC

Defendant(s).

-----------------------------------------------------------------X

Case No. 07 CV 2998 NRB

**ANSWER**
**(electronically filed)**

Jury Trial Demanded

The Defendants, CUSHMAN & WAKEFIELD, INC. and 444 REALTY COMPANY, LLC, as and for their Answer to Plaintiff's Complaint, herein allege as follows upon information and belief:

AS AND TO THE BACKGROUND

1. Denies any knowledge or information sufficient to form a belief as to each and every allegation contained in paragraph designated "1".

2. Denies each and every allegation contained in paragraphs designated "2", "3" and "4".

AS AND TO THE JURISDICTION AND VENUE

3. Denies any knowledge or information sufficient to form a belief as to each and every allegation contained in paragraph designated "5" and "6".

AS AND TO THE PARTIES

4. Denies any knowledge or information sufficient to form a belief as to each and every allegation contained in paragraphs designated "7" and "8".

5. Denies each and every allegation contained in paragraph designated "9", and leaves all questions of law to this honorable court.

AS AND TO THE LOSS

6. Denies each and every allegation contained in paragraphs designated "14", "15", "16" and "17".

7. Denies any knowledge or information sufficient to form a belief as to each and every allegation contained in paragraphs designated "18" and "19".

AS AND TO THE FIRST CLAIM FOR RELIEF

8. As to paragraph 20, Defendants repeat, reiterate and re-allege every denial, denial of knowledge and special denial contained as to paragraphs numbered 1 through 20 of Plaintiff's complaint.

9. Denies each and every allegation contained in paragraph designated "21", and leaves all questions of law to this honorable court.

10. Denies each and every allegation contained in paragraphs designated "22", "23" and "24".

AS AND TO THE SECOND CLAIM FOR RELIEF

11. As to paragraph 25, Defendants repeat, reiterate and re-allege every denial, denial of knowledge and special denial contained in paragraphs numbered 1 through 24 of Plaintiff's complaint.

12. Denies each and every allegation contained in paragraph designated "27", and leaves all questions of law to this honorable court.

13. Denies each and every allegation contained in paragraph designated "29" and "30".

AS AND FOR A FIRST AFFIRMATIVE DEFENSE

14. The alleged causes of action set forth in the complaint did not accrue within the applicable statutory period preceding the commencement of said action, and said action is barred by the statute of limitations.

AS AND FOR A SECOND AFFIRMATIVE DEFENSE

15. The Complaint fails to state a claim upon which relief may be granted against the answering defendant.

AS AND FOR A THIRD AFFIRMATIVE DEFENSE

16. That the plaintiff's alleged damages were not brought about by any negligence on the part of the answering defendant, but rather due to the contributory fault and/or culpable conduct attributable to plaintiff to the extent of total and/or partial diminution of damages alleged in the Complaint.

AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

17. The answering defendant reserves the right to seek indemnification and/or apportionment or contribution from any and all responsible tortfeasors.

AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

18. If the plaintiffs sustained any injuries or damages as alleged in the Complaint, which allegations are expressly denied, then same were sustained because of the culpable conduct of a third-party or parties over whom the answering defendant was not obligated to exercise supervision or control.

AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

19. Plaintiff's claim for subrogation is barred pursuant to the applicable provisions of the lease agreement between plaintiff's insured and the defendants.

AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

20. Plaintiff's action is barred by way of New York's Antisubrogation Rule, which prohibits an insurer from claiming subrogation from its own insured.

Dated: May 18, 2007
White Plains, New York

ROSENBLUM NEWFIELD, LLC.

s/ James S. Newfield

_______________________
James S. Newfield / Fed Bar #JN9422
Attorneys for Defendants
CUSHMAN & WAKEFIELD and
444 REALTY COMPANY, LLC
50 Main Street
White Plains, NY 10606
(914) 686-6100

TO:

Michael B. Golden, Esq.
Plaintiff's Attorney
Robinson & Cole, LLP
885 Third Avenue
Suite 2800
New York, New York 10022
(212) 451-2900

AFFIRMATION OF SERVICE

I, James S. Newfield, an attorney licensed to practice law in New York State, affirm under penalties of perjury: I am not a party to the action, am over 18 years of age and reside in Stamford, Connecticut.

I served the within ANSWER by depositing a true copy thereof enclosed in a post-paid wrapper, addressed to the following persons at the last known address set forth after name:

Dated: May 18, 2007
White Plains, New York

Yours, etc.

s/ James S. Newfield

James S. Newfield / Fed Bar #JN9422
ROSENBLUM & NEWFIELD LLC.
Attorneys for Defendants
CUSHMAN & WAKEFIELD and
444 REALTY COMPANY, LLC
50 Main Street, White Plains, NY 10606
(914) 686-6100

TO:

Michael B. Golden
Plaintiff's Attorney
Robinson & Cole, LLP
885 Third Avenue
Suite 2800
New York, New York 10022
(212) 451-2900

# EXHIBIT C

The Real Estate Board of New York, Inc.

**greement of Lease,** made as of this 1st day of October 1983, betwe
444 REALTY COMPANY, a partnership, having an office in care of Enterprise Development Associates, 11 East 44th Street, New York, N.Y.10017

y of the first part, hereinafter referred to as LANDLORD, and NEXUS PRODUCTIONS, INC., having an office at 10 East 40th Street, New York, N.Y.

07300-00010

(See Rider)

party of the second part, hereinafter referred to as TENANT

**nesseth:** Landlord hereby leases to Tenant and Tenant hereby hires from Landlord that portion of the st floor as depicted on Exhibit A annexed hereto

e building known as 450 West 56th Street
e Borough of Manhattan, City of New York, for the term of ten (10) years and two (2) months

(or until such term shall sooner cease and expire as hereinafter provided) to commence on th 1st day of November nineteen hundred and eighty-three, and to end on th 31st day of January nineteen hundred and ninety-four
dates inclusive, at an annual rental rate of Ninety three thousand, nine hundred eighty four ($93,984) dollars.

$7,832

h Tenant agrees to pay in lawful money of the United States which shall be legal tender in payment of all debts and dues ic and private, at the time of payment, in equal monthly installments in advance on the first day of each month during sai , at the office of Landlord or such other place as Landlord may designate, without any set off or deduction whatsoever pt that Tenant shall pay the first monthly installment(s) on the execution hereof (unless this lease be a renewal).

In the event that, at the commencement of the term of this lease, or thereafter, Tenant shall be in default in the payment of rent to Landlord pur to the terms of another lease with Landlord or with Landlord's predecessor in interest, Landlord may at Landlord's option and without notice t at add the amount of such arrearages to any monthly installment of rent payable hereunder and the same shall be payable to Landlord as additiona

The parties hereto, for themselves, their heirs, distributees, executors, administrators, legal representatives, successor assigns, hereby covenant as follows:

1. Tenant shall pay the rent as above and as hereinafter provided.

pancy 2. Tenant shall use and occupy demised premises for general offices and sound taping studios and editing rooms and for no other purpose.

tions: 3. Tenant shall make no changes in or to the demised premises of any nature without Landlord's prior written consent. Subject to the prior written consent of Landlord, and to the ons of this article, Tenant at Tenant's expense, may make alterations, ations, additions or improvements which are non-structural and which t affect utility services or plumbing and electrical lines, in or to the r of the demised premises by using contractors or mechanics first ap- l by Landlord. All fixtures and all paneling, partitions, railings and like tions, installed in the premises at any time, either by Tenant or by ord in Tenant's behalf, shall, upon installation, become the property of ord and shall remain upon and be surrendered with the demised premises Landlord, by notice to Tenant no later than twenty days prior to the xed as the termination of this lease, elects to relinquish Landlord's right o and to have them removed by Tenant, in which event, the same shall oved from the premises by Tenant prior to the expiration of the lease, ant's expense. Nothing in this article shall be construed to give Land- le to or to prevent Tenant's removal of trade fixtures, moveable office re and equipment, but upon removal of any such from the premises or emoval of other installations as may be required by Landlord, Tenant mmediately and at its expense, repair and restore the premises to the ion existing prior to installation and repair any damage to the demised es or the building due to such removal. All property permitted or re- to be removed by Tenant at the end of the term remaining in the es after Tenant's removal shall be deemed abandoned and may, at the n of Landlord, either be retained as Landlord's property or may be re- from the premises by Landlord at Tenant's expense. Tenant shall, be- aking any alterations, additions, installations or improvements, at its e, obtain all permits, approvals and certificates required by any govern- or quasi-governmental bodies and (upon completion) certificates of pproval thereof and shall deliver promptly duplicates of all such per approvals and certificates to Landlord and Tenant agrees to carry and use Tenant's contractors and sub-contractors to carry such workman's nsation, general liability, personal and property damage insurance as rd may require. If any mechanic's lien is filed against the demised es, or the building of which the same forms a part, for work claimed to een done for, or materials furnished to, Tenant, whether or not done nt to this article, the same shall be discharged by Tenant within ten ereafter, at Tenant's expense, by filing the bond required by law.

s: 4. Landlord shall maintain and repair the public portions of the building, both exterior and interior. Tenant shall, throughout the term of this lease, take good care of the de- premises and the fixtures and appurtenances therein and at Tenant's st and expense, make all non-structural repairs thereto as and when l to preserve them in good working order and condition, reasonable and tear, obsolescence and damage from the elements, fire or other casualty, excepted. Notwithstanding the foregoing, all damage or injury to the demised premises or to any other part of the building, or to its fix- tures, equipment and appurtenances, whether requiring structural or non- structural repairs, caused by or resulting from carelessness, omission, ne- glect or improper conduct of Tenant, Tenant's servants, employees, invitees or licensees, shall be repaired promptly by Tenant at its sole cost and ex- pense, to the satisfaction of Landlord reasonably exercised. Tenant shall also repair all damage to the building and the demised premises caused by the moving of Tenant's fixtures, furniture or equipment. All the aforesaid repairs shall be of quality or class equal to the original work or construc- tion. If Tenant fails after ten days notice to proceed with due diligence to make repairs required to be made by Tenant, the same may be made by the Landlord at the expense of Tenant and the expenses thereof incurred by Landlord shall be collectible as additional rent after rendition of a bill or statement therefor. If the demised premises be or become infested with vermin, Tenant shall at Tenant's expense, cause the same to be exterminated from time to time to the satisfaction of Landlord. Tenant shall give Landlord prompt notice of any defective condition in any plumbing, heating system or electrical lines located in, servicing or passing through the demised premises and following such notice, Land- lord shall remedy the condition with due diligence but at the expense of Tenant if repairs are necessitated by damage or injury attributable to Tenant, Tenant's servants, agents, employees, invitees or licensees as aforesaid. Except as specifically provided in Article 9 or elsewhere in this lease, there shall be no allowance to the Tenant for a diminution of rental value and no liability on the part of Landlord by reason of inconvenience, annoyance or injury to business arising from Landlord, Tenant or others making or failing to make any repairs, alterations, additions or improve- ments in or to any portion of the building or the demised premises or in and to the fixtures, appurtenances or equipment thereof. The provisions of this Article 4 with respect to the making of repairs shall not apply in the case of fire or other casualty which are dealt with in Article 9 hereof.

Window Cleaning: 5. Tenant will not clean nor require, permit, suffer or allow any window in the demised premises to be cleaned from the outside in violation of Section 202 of the New York State Labor Law or any other applicable law or of the Rules of the Board of Standards and Appeals, or of any other Board or body having or asserting jurisdiction.

Requirements of Law, Fire Insurance, Floor Loads: 6. Prior to the commencement of the lease term, if Tenant is then in possession, and at all times thereafter, Tenant, at Tenant's sole cost and expense, shall promptly comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commis- sions and boards and any direction of any public officer pursuant to law,



upon Landlord or Tenant with respect to ... or manner of use thereof, or with respect to arising out of Tenant's use or manner of use of the premises or ilding if arising out of Tenant's use or manner of use of the premises or ilding (including the use permitted under the lease). Except as provided Article 29 hereof, nothing herein shall require Tenant to make structural s or alterations unless Tenant has by its manner of use of the demised ses or method of operation therein, violated any such laws, ordinances, s, rules, regulations or requirements with respect thereto. Tenant may, securing Landlord to Landlord's satisfaction against all damages, interest, ties and expenses, including, but not limited to, reasonable attorneys' fees and expenses, including, but not limited to, reasonable attorneys' by cash deposit or by surety bond in an amount and in a company actory to Landlord, contest and appeal any such laws, ordinances, s, rules, regulations or requirements provided same is done with all nable promptness and provided such appeal shall not subject Landto prosecution for a criminal offense or constitute a default under ease or mortgage under which Landlord may be obligated, or cause emised premises or any part thereof to be condemned or vacated. nt shall not do or permit any act or thing to be done in or to the ised premises which is contrary to law, or which will invalidate or conflict with public liability, fire or other policies of insurance at ime carried by or for the benefit of Landlord with respect to the sed premises or the building of which the demised premises form t, or which shall or might subject Landlord to any liability or responsibility to any person or for property damage, nor shall Tenant keep ing in the demised premises except as now or hereafter permitted e Fire Department, Board of Fire Underwriters, Fire Insurance g Organization or other authority having jurisdiction, and then in such manner and such quantity so as not to increase the rate re insurance applicable to the building, nor use the premises in a er which will increase the insurance rate for the building or any property ed therein over that in effect prior to the commencement of Tenant's pancy. Tenant shall pay all costs, expenses, fines, penalties or damages, s may be imposed upon Landlord by reason of Tenant's failure to comply the provisions of this article and if by reason of such failure the fire insurance rate shall, at the beginning of this lease or at any time thereafter, be r than it otherwise would be, then Tenant shall reimburse Landlord, as ional rent hereunder, for that portion of all fire insurance premiums after paid by Landlord which shall have been charged because of failure by Tenant, and shall make such reimbursement upon irst day of the month following such outlay by Landlord. In any n or proceeding wherein Landlord and Tenant are parties a schedule make-up" of rate for the building or demised premises issued by the York Fire Insurance Exchange, or other body making fire insurance applicable to said premises shall be conclusive evidence of the facts in stated and of the several items and charges in the fire insurance then applicable to said premises. Tenant shall not place a load any floor of the demised premises exceeding the floor load per e foot area which it was designed to carry and which is allowed w. Landlord reserves the right to prescribe the weight and position l safes, business machines and mechanical equipment. Such installa- shall be placed and maintained by Tenant, at Tenant's expense, in gs sufficient, in Landlord's judgment, to absorb and prevent vibranoise and annoyance.

rdination: 7. This lease is subject and subordinate to all ground or underlying leases and to all mortgages which may now or hereafter affect such leases or the real property of which ised premises are a part and to all renewals, modifications, consolida- s, replacements and extensions of any such underlying leases and gages. This clause shall be self-operative and no further instrument of rdination shall be required by any ground or underlying lessee or by mortgagee, affecting any lease or the real property of which the de- d premises are a part. In confirmation of such subordination, Tenant execute promptly any certificate that Landlord may request.

erty— Damage, burse- , Indem- 8. Landlord or its agents shall not be liable for any damage to property of Tenant or of others entrusted to employees of the building, nor for loss of or damage to any property of Tenant by theft or otherwise, nor for any injury or damage to persons or property resulting from any cause of whatsoever nature, unless caused by or due to the igence of Landlord, its agents, servants or employees; nor shall Land- or its agents be liable for any such damage caused by other tenants ersons in, upon or about said building or caused by operations in con- ction of any private, public or quasi public work. If at any time any lows of the demised premises are temporarily closed, darkened or ked up (or permanently closed, darkened or bricked up, if required aw) for any reason whatsoever including, but not limited to Land- 's own acts, Landlord shall not be liable for any damage Tenant sustain thereby and Tenant shall not be entitled to any compensa- therefor nor abatement or diminution of rent nor shall the same ase Tenant from its obligations hereunder nor constitute an eviction. ant shall not move any safe, heavy machinery, heavy equipment, y matter, or fixtures into or out of the building without Landlord's r written consent. If such safe, machinery, equipment, bulky matter ixtures requires special handling, all work in connection therewith l comply with the Administrative Code of the City of New York and other laws and regulations applicable thereto and shall be done during hours as Landlord may designate. Tenant shall indemnify and save mless Landlord against and from all liabilities, obligations, dam- , penalties, claims, costs and expenses for which Landlord shall not be ibursed by insurance, including reasonable attorneys fees, paid, suf- d or incurred as a result of any breach by Tenant, Tenant's agents, ractors, employees, invitees, or licensees, of any covenant or condi- of this lease, or the carelessness, negligence or improper conduct of Tenant, Tenant's agents, contractors, employees, invitees or licensees. ant's liability under this lease extends to the acts and omissions any subtenant, and any agent, contractor, employee, invitee or nsee of any sub-tenant. In case any action or proceeding is brought nst Landlord by reason of any such claim, Tenant, upon written no- from Landlord, will, at Tenant's expense, resist or defend such action roceeding by counsel approved by Landlord in writing, such approval to be unreasonably withheld.

* Rider to be added if necessary.

shall continue in full force and effect except as hereinafter set forth. (b) If the demised premises are partially damaged or rendered partially unusable by fire or other casualty, the damages thereto shall be repaired by and at the expense of Landlord and the rent, until such repair shall be substantially completed, shall be apportioned from the day following the casualty according to the part of the premises which is usable. (c) If the demised premises are totally damaged or rendered wholly unusable by fire or other casualty, then the rent shall be proportionately paid up to the time of the casualty and thenceforth shall cease until the date when the premises shall have been repaired and restored by Landlord, subject to Landlord's right to elect not to restore the same as hereinafter provided. (d) If the demised premises are rendered wholly unusable or (whether or not the demised premises are damaged in whole or in part) if the building shall be so damaged that Landlord shall decide to demolish it or to rebuild it, then, in any of such events, Landlord may elect to terminate this lease by written notice to Tenant given within 90 days after such fire or casualty specifying a date for the expiration of the lease, which date shall not be more than 60 days after the giving of such notice, and upon the date specified in such notice the term of this lease shall expire as fully and completely as if such date were the date set forth above for the termination of this lease and Tenant shall forthwith quit, surrender and vacate the premises without prejudice however to Landlord's rights and remedies against Tenant under the lease provisions in effect prior to such termination, and any rent owing shall be paid up to such date and any payments of rent made by Tenant which were on account of any period subsequent to such date shall be returned to Tenant. Unless Landlord shall serve a termination notice as provided for herein, Landlord shall make the repairs and restorations under the conditions of (b) and (c) hereof, with all reasonable expedition subject to delays due to adjustment of insurance claims, labor troubles and causes beyond Landlord's control. After any such casualty, Tenant shall cooperate with Landlord's restoration by removing from the premises as promptly as reasonably possible, all of Tenant's salvageable inventory and movable equipment, furniture, and other property. Tenant's liability for rent shall resume five (5) days after written notice from Landlord that the premises are substantially ready for Tenant's occupancy. (e) Nothing contained hereinabove shall relieve Tenant from liability that may exist as a result of damage from fire or other casualty. Notwithstanding the foregoing, each party shall look first to any insurance in its favor before making any claim against the other party for recovery for loss or damage resulting from fire or other casualty, and to the extent that such insurance is in force and collectible and to the extent permitted by law, Landlord and Tenant each hereby releases and waives all right of recovery against the other or any one claiming through or under each of them by way of subrogation or otherwise. The foregoing release and waiver shall be in force only if both releasors' insurance policies contain a clause providing that such a release or waiver shall not invalidate the insurance and also, provided that such a policy can be obtained without additional premiums. Tenant acknowledges that Landlord will not carry insurance on Tenant's furniture and/or furnishings or any fixtures or equipment, improvements, or appurtenances removable by Tenant and agrees that Landlord will not be obligated to repair any damage thereto or replace the same. (f) Tenant hereby waives the provisions of Section 227 of the Real Property Law and agrees that the provisions of this article shall govern and control in lieu thereof.

Eminent Domain: 10. If the whole or any part of the demised premises shall be acquired or condemned by Eminent Domain for any public or quasi public use or purpose, then and in that event, the term of this lease shall cease and terminate from the date of title vesting in such proceeding and Tenant shall have no claim for the value of any unexpired term of said lease.

Assignment, Mortgage, Etc.: 11. Tenant, for itself, its heirs, distributees, executors, administrators, legal representatives, successors and assigns, expressly covenants that it shall not assign, mortgage or encumber this agreement, nor underlet, or suffer or permit the demised premises or any part thereof to be used by others, without the prior written consent of Landlord in each instance. If this lease be assigned, or if the demised premises or any part thereof be underlet or occupied by anybody other than Tenant, Landlord may, after default by Tenant, collect rent from the assignee, under-tenant or occupant, and apply the net amount collected to the rent herein reserved, but no such assignment, underletting, occupancy or collection shall be deemed a waiver of this covenant, or the acceptance of the assignee, under-tenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained. The consent by Landlord to an assignment or underletting shall not in any wise be construed to relieve Tenant from obtaining the express consent in writing of Landlord to any further assignment or underletting.*

12. Electric Current: Electricity shall be provided to the demised premises either by direct metering from the local public utility service, or by submetering by Landlord. If the premises are submetered, then the cost to Tenant shall not exceed the cost for such service had the same been directly provided.

Access to Premises: 13. Landlord or Landlord's agents shall have the right (but shall not be obligated) to enter the demised premises in any emergency at any time, and, at other reasonable times, to examine the same and to make such repairs, replacements and improvements as Landlord may deem necessary and reasonably desirable to the demised premises or to any other portion of the building or which Landlord may elect to perform following Tenant's failure to make repairs or perform any work which Tenant is obligated to perform under this lease, or for the purpose of complying with laws, regulations and other directions of governmental authorities. Tenant shall permit Landlord to use and maintain and replace pipes and conduits in and through the demised premises and to erect new pipes and conduits therein. Landlord may, during the progress of any work in the demised premises, take all necessary materials and equipment into said premises without the same constituting an eviction nor shall the Tenant be entitled to any ...

Also, if required by any governmental authority, Landlord may erect an additional stairway through the demised premises in the locations depicted on Schedule B annexed.



on of loss or interruption of business or otherwise. Throughout the hereof Landlord shall have the right to enter the demised premises ...asonable hours for the purpose of showing the same to prospective ...chasers or mortgagees of the building, and during the last six months ...he term for the purpose of showing the same to prospective tenants ...may, during said six months period, place upon the premises the ...al notices "To Let" and "For Sale" which notices Tenant shall permit ...emain thereon without molestation. If Tenant is not present to open ...permit an entry into the premises, Landlord or Landlord's agents ...r enter the same whenever such entry may be necessary or per...sible by master key or forcibly and provided reasonable care is ...ercised to safeguard Tenant's property and such entry shall not render ...dlord or its agents liable therefor, nor in any event shall the obliga...s of Tenant hereunder be affected. If during the last month of the ...n Tenant shall have removed all or substantially all of Tenant's prop... therefrom, Landlord may immediately enter, alter, renovate or re...orate the demised premises without limitation or abatement of rent, or ...rring liability to Tenant for any compensation and such act shall have ...ffect on this lease or Tenant's obligations hereunder. Landlord shall ...e the right at any time, without the same constituting an eviction and ...out incurring liability to Tenant therefor to change the arrangement .../or location of public entrances, passageways, doors, doorways, corri...s, elevators, stairs, toilets, or other public parts of the building and to ...nge the name, number or designation by which the building may be ...wn.

...lt, ...lt Space, ...a 14. No Vaults, vault space or area, whether or not enclosed or covered, not within the property line of the building is leased hereunder, anything contained in or indicated on any sketch, blue print or plan, or anything ...tained elsewhere in this lease to the contrary notwithstanding. Land... makes no representation as to the location of the property line of ... building. All vaults and vault space and all such areas not within the ...perty line of the building, which Tenant may be permitted to use .../or occupy, is to be used and/or occupied under a revocable license, ...if any such license be revoked, or if the amount of such space or ...a be diminished or required by any federal, state or municipal authority ...public utility, Landlord shall not be subject to any liability nor shall ...ant be entitled to any compensation or diminution or abatement of ..., nor shall such revocation, diminution or requisition be deemed ...structive or actual eviction. Any tax, fee or charge of municipal ...orities for such vault or area shall be paid by Tenant.

...upancy: 15. Tenant will not at any time use or occupy the demised premises in violation of the certificate of occupancy issued for the building of which the demised premises are a part. ...ant has inspected the premises and accepts them as is, subject to the riders ...exed hereto with respect to Landlord's work, if any. In any event, Land... makes no representation as to the condition of the premises and Tenant ...es to accept the same subject to violations whether or not of record.

...kruptcy: 16. (a) If at the date fixed as the commencement of the term of this lease or if at any time during the term hereby demised there shall be filed by or against Tenant in any ...rt pursuant to any statute either of the United States or of any state, ...etition in bankruptcy or insolvency or for reorganization or for the ap...intment of a receiver or trustee of all or a portion of Tenant's property, ...within 60 days thereof, Tenant fails to secure a dismissal thereof, or if ...ant make an assignment for the benefit of creditors or petition for or ...r into an arrangement, this lease, at the option of Landlord, exercised ...in a reasonable time after notice of the happening of any one or more ...uch events, may be cancelled and terminated by written notice to the ...ant (but if any of such events occur prior to the commencement date, ...lease shall be ipso facto cancelled and terminated) and whether ...cancellation and termination occur prior to or during the term, ...her Tenant nor any person claiming through or under Tenant by virtue ...any statute or of any order of any court, shall be entitled to possession ...o remain in possession of the premises demised but shall forthwith quit ...surrender the premises, and Landlord, in addition to the other rights ...remedies Landlord has by virtue of any other provision herein or ...where in this lease contained or by virtue of any statute or rule of ..., may retain as liquidated damages, any rent, security deposit or ...eys received by him from Tenant or others in behalf of Tenant. If this ...e shall be assigned in accordance with its terms, the provisions of this ...icle 16 shall be applicable only to the party then owning Tenant's in...st in this lease.

...b) It is stipulated and agreed that in the event of the termination of ...lease pursuant to (a) hereof, Landlord shall forthwith, notwithstand... any other provisions of this lease to the contrary, be entitled to re...r from Tenant as and for liquidated damages an amount equal to the ...erence between the rent reserved hereunder for the unexpired portion ...he term demised and the fair and reasonable rental value of the de...ed premises for the same period. In the computation of such damages ...difference between any instalment of rent becoming due hereunder ...r the date of termination and the fair and reasonable rental value of ...demised premises for the period for which such instalment was payable ...l be discounted to the date of termination at the rate of four per cent ...) per annum. If such premises or any part thereof be re-let by the ...dlord for the unexpired term of said lease, or any part thereof, before ...entation of proof of such liquidated damages to any court, commission ...ribunal, the amount of rent reserved upon such re-letting shall be ...ned to be the fair and reasonable rental value for the part or the whole ...he premises so re-let during the term of the re-letting. Nothing herein ...ained shall limit or prejudice the right of the Landlord to prove for ...obtain as liquidated damages by reason of such termination, an ...unt equal to the maximum allowed by any statute or rule of law in ...t at the time when, and governing the proceedings in which, such dam... are to be proved, whether or not such amount be greater, equal to, or ...than the amount of the difference referred to above.

...ult 17. (1) If Tenant defaults in fulfilling any of the covenants of this lease other than the covenants ...he payment of rent or additional rent; or if the demised premises ...me vacant or deserted; or if the demised premises are damaged ...eason of negligence or carelessness of Tenant, its agents, em...ees or invitees; or if any execution or attachment shall be issued ...ist Tenant or any of Tenant's property whereupon the demised ...or if Tenant shall make default with respect to any other lease ...tween Landlord and Tenant; or if Tenant shall fail to move into ...take possession of the premises within fifteen (15) days after ...commencement of the term of this lease, of which fact Landl... shall be the sole judge; then, in any one or more of such events, u... Landlord serving a written five (5) days notice upon Tenant speci...ing the nature of said default and upon the expiration of said five (... days, if Tenant shall have failed to comply with or remedy such ...fault, or if the said default or omission complained of shall be of ... nature that the same cannot be completely cured or remedied wit... said five (5) day period, and if Tenant shall not have diligently co...menced curing such default within such five (5) day period, and sh... not thereafter with reasonable diligence and in good faith proce... to remedy or cure such default, then Landlord may serve a written th... (3) days' notice of cancellation of this lease upon Tenant, and up... the expiration of said three (3) days, this lease and the term th... under shall end and expire as fully and completely as if the expirati... of such three (3) day period were the day herein definitely fixed ... the end and expiration of this lease and the term thereof and Ten... shall then quit and surrender the demised premises to Landlord ... Tenant shall remain liable as hereinafter provided.

(2) If the notice provided for in (1) hereof shall have been giv... and the term shall expire as aforesaid: or if Tenant shall make defa... in the payment of the rent reserved herein or any item of additio... rent herein mentioned or any part of either or in making any, ot... payment herein required: then and in any of such events Landlc... may without notice, re-enter the demised premises either by force ... otherwise, and dispossess Tenant by summary proceedings or oth... wise, and the legal representative of Tenant or other occupant ... demised premises and remove their effects and hold the premises ... if this lease had not been made, and Tenant hereby waives the serv... of notice of intention to re-enter or to institute legal proceedings ... that end. If Tenant shall make default hereunder prior to the da... fixed as the commencement of any renewal or extension of this lea... Landlord may cancel and terminate such renewal or extension agre... ment by written notice.

Remedies of Landlord and Waiver of Redemption: 18. In case of any such default, re-entry, expiration and/... dispossess by summary proceedings or otherwise, (a) t... rent shall become due thereupon and be paid up to t... time of such re-entry, dispossess and/or expiration, t... gether with such expenses as Landlord may incur for leg... expenses, attorneys' fees, brokerage, and/or putting the demised premis... in good order, or for preparing the same for re-rental; (b) Landlo... may re-let the premises or any part or parts thereof, either in t... name of Landlord or otherwise, for a term or terms, which may at Lan... lord's option be less than or exceed the period which would otherwise ha... constituted the balance of the term of this lease and may grant conce... sions or free rent or charge a higher rental than that in this lease, and/... (c) Tenant or the legal representatives of Tenant shall also pay Landlo... as liquidated damages for the failure of Tenant to observe and perfor... said Tenant's covenants herein contained, any deficiency between the re... hereby reserved and/or covenanted to be paid and the net amount, if an... of the rents collected on account of the lease or leases of the demis... premises for each month of the period which would otherwise have co... stituted the balance of the term of this lease. The failure of Landlord to re-l... the premises or any part or parts thereof shall not release or affect Tenant... liability for damages. In computing such liquidated damages there shall b... added to the said deficiency such expenses as Landlord may incur in conne... tion with re-letting, such as legal expenses, attorneys' fees, brokerage, adve... tising and for keeping the demised premises in good order or for preparing th... same for re-letting. Any such liquidated damages shall be paid in monthly i... stallments by Tenant on the rent day specified in this lease and any su... brought to collect the amount of the deficiency for any month shall not pr... judice in any way the rights of Landlord to collect the deficiency for any sub... sequent month by a similar proceeding. Landlord, in putting the demise... premises in good order or preparing the same for re-rental may, at Landlord... option, make such alterations, repairs, replacements, and/or decorations i... the demised premises as Landlord, in Landlord's sole judgment, considers a... visable and necessary for the purpose of re-letting the demised premises, an... the making of such alterations, repairs, replacements, and/or decoration... shall not operate or be construed to release Tenant from liability hereunder ... aforesaid. Landlord shall in no event be liable in any way whatsoever fo... failure to re-let the demised premises, or in the event that the demise... premises are re-let, for failure to collect the rent thereof under such re... letting, and in no event shall Tenant be entitled to receive any excess... if any, of such net rents collected over the sums payable by Tenant t... Landlord hereunder. In the event of a breach or threatened breach b... Tenant of any of the covenants or provisions hereof, Landlord shall ha... the right of injunction and the right to invoke any remedy allowed at la... or in equity as if re-entry, summary proceedings and other remedies wer... not herein provided for. Mention in this lease of any particular remedy... shall not preclude Landlord from any other remedy, in law or in equity... Tenant hereby expressly waives any and all rights of redemption grante... by or under any present or future laws in the event of Tenant bein... evicted or dispossessed for any cause, or in the event of Landlord obtain... ing possession of demised premises, by reason of the violation by Tenan... of any of the covenants and conditions of this lease, or otherwise.

Fees and Expenses 19. If tenant shall default in the observance or performance of any term or covenant on tenant's part to be observed o... performed under or by virtue of any of the terms or pro... visions in any article of this lease, then, unless otherwise provided elsewhere in this lease, landlord may immediately or at any time thereafter and with... out notice perform the obligation of tenant thereunder, and if landlord, i... connection therewith or in connection with any default by tenant in th... covenant to pay rent hereunder, makes any expenditures or incurs any obli... gations for the payment of money, including but not limited to attorney's fees, in instituting, prosecuting or defending any action or proceeding, suc... sums so paid or obligations incurred with interest and costs shall be deeme... to be additional rent hereunder and shall be paid by tenant to landlord withi... five (5) days of rendition of any bill or statement to tenant therefor, and i... tenant's lease term shall have expired at the time of making of such expend... tures or incurring of such obligations, such sums shall be recoverable by landlord as damages.

No Representations by Landlord: 20. Neither Landlord nor Landlord's agents have mad... any representations or promises with respect to th... physical condition of the building, the land upon which i... is erected or the demised premises, the rents, leases, ex...

. . . of operation or any . . . expressly set forth and no rights, easements or . . . ses except as herein expressly set forth and no rights, easements or . . . es are acquired by Tenant by implication or otherwise except as ex . . . y set forth in the provisions of this lease. Tenant has inspected the . . . ng and the demised premises and is thoroughly acquainted with their . . . tion, and agrees to take the same "as is" and acknowledges that the . . . g of possession of the demised premises by Tenant shall be conclusive . . . nce that the said premises and the building of which the same form a . . . were in good and satisfactory condition at the time such possession . . . o taken, except as to latent defects. All understandings and agree- . . . s heretofore made between the parties hereto are merged in this . . . act, which alone fully and completely expresses the agreement be- . . . Landlord and Tenant and any executory agreement hereafter . . . shall be ineffective to change, modify, discharge or effect an aban- . . . ent of it in whole or in part, unless such executory agreement is in . . . g and signed by the party against whom enforcement of the change, . . . ication, discharge or abandonment is sought.

. . . 21. Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Landlord the demised premises, broom clean, in good order and . . . tion, ordinary wear excepted, and Tenant shall remove all its prop- . . . Tenant's obligation to observe or perform this covenant shall sur- . . . he expiration or other termination of this lease. If the last day of . . . rm of this lease or any renewal thereof, falls on Sunday, this lease . . . expire at noon on the preceding Saturday unless it be a legal holi- . . . n which case it shall expire at noon on the preceding business day.

. . . ment: 22. Landlord covenants and agrees with Tenant that upon Tenant paying the rent and additional rent and observing and performing all the terms, covenants and conditions, . . . enant's part to be observed and performed, Tenant may peaceably . . . uietly enjoy the premises hereby demised, subject, nevertheless, to . . . rms and conditions of this lease including, but not limited to, Article . . . reof and to the ground leases, underlying leases and mortgages here- . . . ore mentioned.

. . . ssion: 23. If Landlord is unable to give possession of the demised premises on the date of the commencement of the term hereof, because of the holding-over or retention of possession of any tenant, undertenant or occupants, . . . the premises are located in a building being constructed, because . . . building has not been sufficiently completed to make the premises . . . for occupancy or because of the fact that a certificate of occupancy . . . ot been procured or for any other reason, Landlord shall not be . . . t to any liability for failure to give possession on said date and the . . . ty of the lease shall not be impaired under such circumstances, nor . . . the same be construed in any wise to extend the term of this lease, . . . he rent payable hereunder shall be abated (provided Tenant is not . . . nsible for the inability to obtain possession) until after Landlord . . . have given Tenant written notice that the premises are substantially . . . for Tenant's occupancy. If permission is given to Tenant to enter . . . he possession of the demised premises or to occupy premises other . . . the demised premises prior to the date specified as the commence- . . . of the term of this lease, Tenant covenants and agrees that such . . . pancy shall be deemed to be under all the terms, covenants, condi- . . . and provisions of this lease, except as to the covenant to pay rent. . . . provisions of this article are intended to constitute "an express pro- . . . n to the contrary" within the meaning of Section 223-a of the New . . . Real Property Law.

Waivers: 24. The failure of Landlord to seek redress for violation of, or to insist upon the strict performance of any cov- . . . or condition of this lease or of any of the Rules or Regulations set . . . or hereafter adopted by Landlord, shall not prevent a subsequent act . . . n would have originally constituted a violation from having all the . . . and effect of an original violation. The receipt by Landlord of rent . . . knowledge of the breech of any covenant of this lease shall not be . . . ed a waiver of such breach and no provision of this lease shall be . . . ed to have been waived by Landlord unless such waiver be in writing . . . d by Landlord. No payment by Tenant or receipt by Landlord . . . lesser amount than the monthly rent herein stipulated shall be . . . ed to be other than on account of the earliest stipulated rent, nor . . . any endorsement or statement of any check or any letter accompany- . . . ny check or payment as rent be deemed an accord and satisfaction, . . . Landlord may accept such check or payment without prejudice to . . . lord's right to recover the balance of such rent or pursue any other . . . dy in this lease provided. No act or thing done by Landlord or Land- . . . agents during the term hereby demised shall be deemed an accept- . . . of a surrender of said premises and no agreement to accept such . . . nder shall be valid unless in writing signed by Landlord. No em- . . . e of Landlord or Landlord's agent shall have any power to accept . . . eys of said premises prior to the termination of the lease and the . . . ery of keys to any such agent or employee shall not operate as a ter- . . . tion of the lease or a surrender of the premises.

. . . er of . . . by Jury: 25. It is mutually agreed by and between Landlord and Tenant that the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding . . . unterclaim brought by either of the parties hereto against the other . . . ot for personal injury or property damage) on any matters what- . . . r arising out of or in any way connected with this lease, the rela- . . . ip of Landlord and Tenant, Tenant's use of or occupancy of said . . . ises, and any emergency statutory or any other statutory remedy. . . . further mutually agreed that in the event Landlord commences any . . . mary proceeding for possession of the premises, Tenant will not inter- . . . any counterclaim of whatever nature or description in any such pro- . . . ng.

. . . lity to . . . rm: 26. This lease and the obligation of Tenant to pay rent hereunder and perform all of the other covenants and agreements hereunder on part of Tenant to be performed . . . in no wise be affected, impaired or excused because Landlord is un- . . . to fulfill any of its obligations under this lease or to supply or is de- . . . [illegible] or decorations or is unable to supply or is delayed in supplying any equip- ment or fixtures if Landlord is prevented or delayed from so doing by reason of strike or labor troubles or any cause whatsoever including, but not limited to, government preemption in connection with a Na- tional Emergency or by reason of any rule, order or regulation of any department or subdivision thereof of any government agency or by rea- son of the conditions of supply and demand which have been or are affected by war or other emergency.

Bills and Notices: 27. Except as otherwise in this lease provided, a bill, statement, notice or communication which Landlord may desire or be required to give to Tenant, shall be deemed sufficiently given or rendered if, in writing, delivered to Tenant personally or sent by registered or certified mail addressed to Tenant at the building of which the demised premises form a part or at the last known resi- dence address or business address of Tenant or left at any of the afore- said premises addressed to Tenant, and the time of the rendition of such bill or statement and of the giving of such notice or communica- tion shall be deemed to be the time when the same is delivered to Tenant, mailed, or left at the premises as herein provided. Any notice by Tenant to Landlord must be served by registered or certified mail addressed to Landlord at the address first hereinabove given or at such other address as Landlord shall designate by written notice.

Water Charges: 28. If Tenant requires, uses or consumes water for any purpose in addition to ordinary lavatory purposes (of which fact Tenant constitutes Landlord to be the sole judge) Landlord may install a water meter and thereby measure Tenant's water consumption for all purposes. Tenant shall pay Landlord for the cost of the meter and the cost of the installation thereof and throughout the duration of Tenant's occupancy Tenant shall keep said meter and in- stallation equipment in good working order and repair at Tenant's own cost and expense in default of which Landlord may cause such meter and equipment to be replaced or repaired and collect the cost thereof from Tenant. Tenant agrees to pay for water consumed, as shown on said meter as and when bills are rendered, and on default in making such payment Landlord may pay such charges and collect the same from Tenant. Tenant covenants and agrees to pay the sewer rent, charge or any other tax, rent levy or charge which now or hereafter is assessed, imposed or a lien upon the demised premises or the realty of which they are part pursuant to law order or regulation made or issued in connection with the use, consump- tion, maintenance or supply of water, water system or sewage or sewage connection or system. The bill rendered by Landlord shall be payable by Tenant as additional rent. If the building or the demised premises or any part thereof be supplied with water through a meter through which water is also supplied to other premises Tenant shall pay to Landlord as additional rent, on the first day of each month, ~~*~~ ~~*~~ * ($——— ) of the total meter charges, as Tenant's portion. Independently of and in addition to any of the remedies reserved to Land- lord hereinabove or elsewhere in this lease, Landlord may sue for and collect any monies to be paid by Tenant or paid by Landlord for any of the reasons or purposes hereinabove set forth.

Sprinklers: 29. Anything elsewhere in this lease to the contrary not withstanding, if the New York Board of Fire Under- writers or the New York Fire Insurance Exchange or any bureau, depart- ment or official of the federal, state or city government require or rec- ommend the installation of a sprinkler system or that any changes modifications, alterations, or additional sprinkler heads or other equip- ment be made or supplied in an existing sprinkler system by reason of Tenant's business, or the location of partitions, trade fixtures, or other contents of the demised premises, or for any other reason, or if any such sprinkler system installations, changes, modifications, alterations, addi- tional sprinkler heads or other such equipment, become necessary to prevent the imposition of a penalty or charge against the full allowance for a sprinkler system in the fire insurance rate set by any said Exchange or by any fire insurance company, Tenant shall, at Tenant's expense promptly make such sprinkler system installations, changes, modifica- tions, alterations, and supply additional sprinkler heads or other equip- ment as required whether the work involved shall be structural or non structural in nature. Tenant shall pay to Landlord as additional rent the * sum of $———, on the first day of each month during the term of this lease, as Tenant's portion of the contract price for sprinkler supervisory service.

Elevators, Heat, Cleaning: 30. As long as Tenant is not in default under any of the covenants of this lease Landlord shall: (a) provide necessary elevator facilities on business days from 8 a.m. to 6 p.m. and on Saturdays from 8 a.m. to 1 p.m. (b) furnish heat to the demised premises, when and as required by law, on business days from 8 a.m. to 6 p.m. and on Saturdays from 8 a.m. to 1 p.m.; (c) at Landlord's expense cause to be kept clean the public halls and public portions of the building, which are used in common by all tenants. Tenant shall at Tenant's expense, keep the demised premises clean and in order, to the satisfaction of Landlord, and for that purpose shall employ the person or persons, or corporation approved by Landlord. Tenant shall pay to Landlord the cost of removal of any of Tenant's refuse and rubbish from the building. Bills for the same shall be rendered by Landlord to Tenant at such time as Landlord may elect and shall be due and payable when rendered, and the amount of such bills shall be deemed to be, and be paid as, additional rent. Tenant shall, however, have the option of indepen- dently contracting for the removal of such rubbish and refuse in the event that Tenant does not wish to have same done by employees of Landlord. Under such circumstances, however, the removal of such refuse and rubbish by others shall be subject to such rules and regulations as, in the judgment of Landlord, are necessary for the proper operation of the building. Landlord reserves the right to stop service of the heating, elevator, plumbing and electric systems, when necessary, by reason of accident, or emergency, or for repairs, alterations, replacements or im- provements, in the judgment of Landlord desirable or necessary to be made, until said repairs, alterations, replacements or improvements sha . . .

---

* Space to be filled in or deleted.

*Tenant's pro-rata share of same, based on the square footage being served thereby

been completed. And Landlord shall have no liability for failure to supply heat, elevator, plumbing and electric service, said period or when prevented from so doing by strikes, accidents any cause beyond Landlord's control, or by laws, orders or regulations of any Federal, State or Municipal Authority, or failure of coal, oil other suitable fuel supply, or inability by exercise of reasonable diligence to obtain coal, oil or other suitable fuel. If the building of which demised premises are a part supplies manually operated elevator service, Landlord may proceed with alterations necessary to substitute automatic control elevator service upon ten (10) days written notice to Tenant without in any way affecting the obligations of Tenant hereunder, provided that the same shall be done with the minimum amount of inconvenience to Tenant, and Landlord pursues with due diligence the completion of the alterations.

Security: 31. Tenant has deposited with Landlord [a Letter of Credit in] the sum of $93,984 as security for the faithful performance and observance by Tenant of the terms, provisions and conditions of this lease; it is agreed that in the event Tenant defaults in respect of any of the terms, provisions and conditions of this lease, including, but not limited to, the payment of rent and additional rent, Landlord may use, apply or retain the whole or any part of the security so deposited to the extent required for the payment of any rent and additional rent or any other sum as to which Tenant is in default or for any sum which Landlord may expend or may be required to expend by reason of Tenant's default in respect of any of the terms, covenants and conditions of this lease, including but not limited to, any damages or deficiency in the re-letting of the premises, whether such damages or deficiency accrued before or after summary proceedings or other re-entry by Landlord. In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this lease, the security shall be returned to Tenant after the date fixed as the end of the Lease and after delivery of entire possession of the demised premises to Landlord. In the event of a sale of the land and building or leasing of the building, of which the demised premises form a part, Landlord shall have the right to transfer the security to the vendee or lessee and Landlord shall thereupon be released by Tenant from all liability for the return of such security; and Tenant agrees to look to the new Landlord solely for the return of said security; and it is agreed that the provisions hereof shall apply to every transfer or assignment made of the security to a new Landlord. Tenant further covenants that it will not assign or encumber or attempt to assign or encumber the monies deposited herein as security and that neither Landlord nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance.

Captions: 32. The Captions are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this lease nor the intent of any provision thereof.

Definitions: 33. The term "Landlord" as used in this lease means only the owner, or the mortgagee in possession, for the time being of the land and building (or the owner of a lease of the building or of the land and building) of which the demised premises form a part, so that in the event of any sale or sales of said land and building or of said lease, or in the event of a lease of said building, or of the land and building, the said Landlord shall be and hereby is entirely freed and relieved of all covenants and obligations of Landlord hereunder, and it shall be deemed and construed without further agreement between the parties and the purchaser, at any such sale, or the said lessee of the building, or of the land and building, that the purchaser or the lessee of the building, or of the land and building, that the purchaser or the lessee of the building has assumed and agreed to carry out any and all covenants and obligations of Landlord hereunder. The words "re-enter" and "re-entry" as used in this lease are not restricted to their technical legal meaning. The term "business days" as used in this lease shall exclude Saturdays (except such portion thereof as is covered by specific hours in Article 30 hereof), Sundays and all days observed by the State or Federal Government as legal holidays and those designated as holidays by the applicable building service union employees service contract or by the applicable Operating Engineers contract with respect to HVAC service.

Adjacent Excavation—Shoring: 34. If an excavation shall be made upon land adjacent to the demised premises, or shall be authorized to be made, Tenant shall afford to the person causing or authorized to cause such excavation, license to enter upon the demised premises for the purpose of doing such work as said person shall deem necessary to preserve the wall or the building of which demised premises form a part from injury or damage and to support the same by proper foundations without any claim for damages or indemnity against Landlord, or diminution or abatement of rent.

Rules and Regulations: 35. Tenant and Tenant's servants, employees, agents, visitors, and licensees shall observe faithfully, and comply strictly with, the Rules and Regulations and such other and further reasonable Rules and Regulations as Landlord or Landlord's agents may from time to time adopt. Notice of any additional rules or regulations shall be given in such manner as Landlord may elect. In case Tenant disputes the reasonableness of any additional Rule or Regulation hereafter made or adopted by Landlord or Landlord's agents, the parties hereto agree to submit the question of the reasonableness of such Rule or Regulation for decision to the New York office of the American Arbitration Association, whose determination shall be final and conclusive upon the parties hereto. The right to dispute the reasonableness of any additional Rule or Regulation upon Tenant's part shall be deemed waived unless the same shall be asserted by service of a notice, in writing upon Landlord within ten (10) days after the giving of notice thereof. Nothing in this lease contained shall be construed to impose upon Landlord any duty or obligation to enforce the Rules and Regulations or terms, covenants or conditions in any other lease, as against any other tenant and Landlord shall not be liable to Tenant for violation of the same by any other tenant, its servants, employees, agents, visitors or licensees.

Glass: 36. Landlord shall replace, at the expense of Tenant, any and all plate and other glass damaged or broken from any cause whatsoever in and about the demised premises. Landlord may insure, and keep insured, at Tenant's expense, all plate and other glass in the demised premises for and in the name of Landlord. Bills for the premiums therefor shall be rendered by Landlord to Tenant at such times as Landlord may elect, and shall be due from, and payable by, Tenant when rendered, and the amount thereof shall be deemed to be, and be paid as, additional rent.

Successors and Assigns: 37. The covenants, conditions and agreements contained in this lease shall bind and inure to the benefit of Landlord and Tenant and their respective heirs, distributees, executors, administrators, successors, and except as otherwise provided in this lease, their assigns.

SEE RIDER FOR SECTIONS 38-58 , and see Addendum.

In Witness Whereof, Landlord and Tenant have respectively signed and sealed this lease as of the day and year first above written.

Witness for Landlord: ............................

444 Realty Company
By [signature] [L. S.] CORP. SEAL

Witness for Tenant: ............................

NEXUS PRODUCTIONS, INC. [L. S.]
By [signature] CORP. SEAL

[...]ORATE LANDLORD
[...]E OF NEW YORK, } ss.:
[...]nty of

[O]n this day of , 19 , before me

[person]ally came
[to me] known, who being by me duly sworn, did depose and say that he resides

[...] is the of

[the c]orporation described in and which executed the foregoing instrument, as [LAND]LORD; that he knows the seal of said corporation; that the seal affixed to [said in]strument is such corporate seal; that it was so affixed by order of the Board [of Dir]ectors of said corporation, and that he signed his name thereto by like order.

CORPORATE TENANT
STATE OF NEW YORK, } ss.:
County of

On this day of , 19 , before [me]

personally came
to me known, who being by me duly sworn, did depose and say that he resi[des]

in

that he is the of

the corporation described in and which executed the foregoing instrument, as TENANT; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

[INDIV]IDUAL LANDLORD
[STAT]E OF NEW YORK, } ss.:
[Co]unty of

[O]n this day of , 19 , before me

[person]ally came

[to me] known and known to me to be the individual described in and who, as [LAND]LORD, executed the foregoing instrument and acknowledged to me that [he] executed the same.

INDIVIDUAL TENANT
STATE OF NEW YORK, } ss.:
County of

On this day of , 19 , before [me]

personally came

to me known and known to me to be the individual described in and who, as TENANT, executed the foregoing instrument and acknowledged to me that he executed the same.

## IMPORTANT — PLEASE READ

### RULES AND REGULATIONS ATTACHED TO AND MADE A PART OF THIS LEASE IN ACCORDANCE WITH ARTICLE 35.

[1. The] sidewalks, entrances, driveways, passages, courts, elevators, vestibules, stair[ways,] corridors or halls shall not be obstructed or encumbered by any Tenant or used [fo]r purpose other than for ingress to and egress from the demised premises and [for del]ivery of merchandise and equipment in a prompt and efficient manner using [elevato]rs and passageways designated for such delivery by Landlord. There shall not [be use]d in any space, or in the public hall of the building, either by any Tenant or [by jobb]ers or others in the delivery or receipt of merchandise, any hand trucks, [except] those equipped with rubber tires and sideguards. If said premises are situate [on the] ground floor of the building Tenant thereof shall further, at Tenant's ex[pense,] keep the sidewalks and curb in front of said premises clean and free from [ice, sno]w, dirt and rubbish.

[2. T]he water and wash closets and plumbing fixtures shall not be used for any pur[pose] other than those for which they were designed or constructed and no sweepings, [rubbish], rags, acids or other substances shall be deposited therein, and the expense of [any br]eakage, stoppage, or damage resulting from the violation of this rule shall be [borne] by the tenant who, or whose clerks, agents, employees or visitors, shall have [caused] it.

[3. N]o carpet, rug or other article shall be hung or shaken out of any window of [the bu]ilding; and no Tenant shall sweep or throw or permit to be swept or thrown [from t]he demised premises any dirt or other substances into any of the corridors [or hall]s, elevators, or out of the doors or windows or stairways of the building, and [Tenant] shall not use, keep or permit to be used or kept any foul or noxious gas [or subs]tance in the demised premises, or permit or suffer the demised premises to be [occupi]ed, or used in a manner offensive or objectionable to Landlord or other [occupa]nts of the building by reason of noise, odors and/or vibrations, or interfere [in any] way with other Tenants or those having business therein, nor shall any animals [or bird]s be kept in or about the building. Smoking or carrying lighted cigars or [cigarett]es in the elevators of the building is prohibited.

[4. N]o awnings or other projections shall be attached to the outside walls of the [buildin]g without the prior written consent of Landlord.

[5. N]o sign, advertisement, notice or other lettering shall be exhibited, inscribed, [painted] or affixed by any Tenant on any part of the outside of the demised premises [or the] building or on the inside of the demised premises if the same is visible from [the out]side of the premises without the prior written consent of Landlord, except [that th]e name of Tenant may appear on the entrance door of the premises. In [the eve]nt of the violation of the foregoing by any Tenant, Landlord may remove same [without] any liability, and may charge the expense incurred by such removal to [Tenant] or Tenants violating this rule. Interior signs on doors and directory tablet shall be inscribed, painted or affixed for each Tenant by Landlord at the expens[e] of such Tenant, and shall be of a size, color and style acceptable to Landlord.

6. No Tenant shall mark, paint, drill into, or in any way deface any part of th[e] demised premises or the building of which they form a part. No boring, cutting o[r] stringing of wires shall be permitted, except with the prior written consent o[f] Landlord, and as Landlord may direct. No Tenant shall lay linoleum, or othe[r] similar floor covering, so that the same shall come in direct contact with the floo[r] of the demised premises, and, if linoleum or other similar floor covering is desire[d] to be used an interlining of builder's deadening felt shall be first affixed to the floor by a paste or other material, soluble in water, the use of cement or other simila[r] adhesive material being expressly prohibited.

7. No additional locks or bolts of any kind shall be placed upon any of the door[s] or windows by any Tenant, nor shall any changes be made in existing locks o[r] mechanism thereof. Each Tenant must, upon the termination of his Tenancy, retur[n] to Landlord all keys of stores, offices and toilet rooms, either furnished to, o[r] otherwise procured by, such Tenant, and in the event of the loss of any keys, s[o] furnished, such Tenant shall pay to Landlord the cost thereof.

8. Freight, furniture, business equipment, merchandise and bulky matter of any description shall be delivered to and removed from the premises only on the freigh[t] elevators and through the service entrances and corridors, and only during hours an[d] in a manner approved by Landlord. Landlord reserves the right to inspect al[l] freight to be brought into the building and to exclude from the building all freigh[t] which violates any of these Rules and Regulations or the lease of which these Rule[s] and Regulations are a part.

9. No Tenant shall obtain for use upon the demised premises ice, drinking water, towel and other similar services, or accept barbering or bootblacking services in th[e] demised premises, except from persons authorized by Landlord, and at hour[s] and under regulations fixed by Landlord. Canvassing, soliciting and peddling i[n] the building is prohibited and each Tenant shall co-operate to prevent the same.

10. Landlord reserves the right to exclude from the building between the hours o[f] 6 P.M. and 8 A.M. and at all hours on Sundays, and legal holidays all person[s] who do not present a pass to the building signed by Landlord. Landlord will furnis[h] passes to persons for whom any Tenant requests same in writing. Each Tenant shal[l] be responsible for all persons for whom he requests such pass and shall be liable to Landlord for all acts of such persons.

11. Landlord shall have the right to prohibit any advertising by any Tenant which in Landlord's opinion, tends to impair the reputation of the building or its desir[-] ability as a building for offices, and upon written notice from Landlord, Tenant shal[l] refrain from or discontinue such advertising.

12. Tenant shall not bring or permit to be brought or kept in or on the demised premises, any inflammable, combustible or explosive fluid, material, chemical or sub[-] stance, or cause or permit any odors of cooking or other processes, or any unusual or other objectionable odors to permeate in or emanate from the demised premises.

TO

STANDARD FORM OF

**Loft Lease**

The Real Estate Board of New York, Inc.
©Copyright 1973. All Rights Reserved.
Reproduction in whole or in part prohibited.

Dated 19

Rent per Year

Rent per Month

Term
From
To

Drawn by.................... Checked by....................
Entered by.................... Approved by....................



RIDER

Wherever the terms, convenants and conditions contained in the printed portion of this Lease shall be in conflict with any of the terms, covenants and conditions in the Additiona Clauses 38-58 that follow, the Additional Clauses shall prevail.

38. Increase in Real Estate Taxes:

The parties hereto, recognizing the sharp increase in taxes and other expenses, and anticipating the continuation to such pattern, desire to set forth a fair and equitable method of defraying and absorbing such increases between Landlord and Tenant. Tenant therefore agrees to pay Landlord, as additional rent, its share of any such increase as follows:

A. As Used in this Article 38, the Following Definitions Shall Apply:

1. "Taxes" as used herein shall mean the aggregate of the following items: (a) real estate taxes, (b) assessments (including without limitation, assessments for public improvements or benefits whether or not commenced or completed during the term of this lease, (c) water charges and (d) sewer rents, which may be assessed, levied, confirmed or imposed on or in respect of, or be a lien upon, the land and/or the Building thereof on which the Demised Premises are a part and (e) any tax or assessment levied, assessed or imposed against such land and/or Building or the rents or profits therefrom or any other charge or levy made by a taxing authority to the extent that the same shall be in lieu of all or any portion of any item set forth herein.

2. "Base Year" shall mean the fiscal year commencing July 1, 1983 and ending June 30, 1984.

3. "Base Tax" shall mean the amount of Taxes, as finally determined, payable by Landlord during the Base Year.

4. Tenant's "Proportionate Share" shall be 16.13% of any increase Taxes over the Taxes in the Base Year.

B. Tenant covenants and agrees to pay, in each and every fiscal year commencing July 1 and ending June 30 during the term of this lease and any and all renewals, extensions and modifications thereof, Tenant's Proportionate Share.

C. Tenant's Proportionate Share shall be due and payable within ten (10) days after Landlord shall have delivered to Tenant a statement setting forth the amount of Tenant's Proportionate Share and the basis therefor. Bills for such Taxes shall be sufficient evidence of amount, for the purpose of calculating Tenant's Proportionate Share. In the event Tenant fails to pay Tenant's Proportionate Share when due, the Landlord shall be entitled, with respect thereto, to any and all remedies to which Landlord may be entitled under this lease for default in the payment of rent. The failure of Landlord to bill Tenant for Tenant's Proportionate Share in any fiscal year shall not prejudice the right of Landlord to subsequently bill Tenant for such fiscal year or any subsequent fiscal year.

the ... opriate ... ng ... ority.

D. In the event the Base Tax is reduced as a result of any appropriate proceeding, such reduced liability as finally fixed shall be regarded as the Base Tax and Landlord shall have the right to adjust the amount due from Tenant in any year in which Tenant is or was obligated to pay Tenant's Proportionate Share, and Tenant agrees to pay the amount of such adjustment on the rent installment day next following receipt of a written statement from Landlord setting forth the amount and basis of such adjustment. In the event Landlord shall receive a refund of Taxes for any year during which Tenant has paid Tenant's Proportionate Share, as above provided, the proceeds of such refund, less legal fees and other expenses incurred in collecting the same, shall be applied and allocated to the periods for which the refund was obtained and appropriate adjustment shall be made between Landlord and Tenant.

E. With respect to any period at the expiration of the term of this lease which shall constitute a partial fiscal year, Landlord's statement shall apportion the amount due hereunder. The obligation of Tenant, with respect to Tenant's Proportionate Share applicable for the last year of the term of this lease, or part thereof, shall survive the expiration, or sooner termination, of the term of this lease.

(the next page is numbered -1a-)

SS 00287

F. If Tenant's obligation under this Section 38 shall exceed $5,000 for any tax year, then during the following year, Tenant shall pay monthly a sum to Landlord 1/12 of the amount so charged. Such amounts shall be applied on account of Tenant's obligation hereunder for the then current tax year.

G. Landlord has advised Tenant that the land and Building of which the Demised Premises are a part, constitute a portion of a larger tax lot. Until the land and Building of which the Demised Premises are a part are separately assessed, the Taxes for the Building in which the demised premises are situated shall be deemed 20.2% of the total taxes for said larger tax lot, (i.e. 16.13% times 20.2% of the total taxes for said larger tax lot), plus 100% of taxes attributable to all changes and improvements made by Lessee.

39. Escalation - Other Building Expenses:

In addition to the additional rent that may be payable by reason of the escalation set forth in Article 38 hereof, Tenant covenants and agrees to pay Landlord, without set-off or deduction, for each calendar year or portion thereof during the term of this lease, further additional rent as set forth below:

A. As Used in this Article 39, the Following Defintions Shall Apply:

1. "Labor Rate": The rate of compensation of persons ~~engaged in the general maintenance and operation of the Building~~ (herein referred to as "porters") who are members of Local 32B or not whether employed by Landlord or by an independent contractor with whom Landlord shall have contracted or may theretofore contract for such services, and there shall be included in the determination of such Labor Rates the basic wage of porters, hours of employment, number of paid holidays or vacation days, social security taxes, unemployment insurance taxes, payroll and other taxes imposed upon wages, and the cost, if ~~any of~~ providing disability, hospitalization, medical, welfare, pension, retirement or other benefits imposed by law or by any collective bargaining agreement applicable to such porters. ~~If at any time during the term of this lease porters or persons now designated as porters are no longer engaged in the general maintenance and operation of the Building, there shall be substituted for the words porter or porters, appearing in this paragraph that classification of employee engaged in the general maintenance and operation of the Building most nearly comparable to the classification now designated as porter or porters.~~

2. "Base Date": December 31, 1983.

3. "Computation Date": Any February 1st during the term of this lease subsequent to the Base Date; provided, however, that if Labor Rates for the year in which such Computation Date falls are not fixed on or before such Computation Date, then and in such event the Computation Date shall be the first day of the first month following the date on which Landlord or an association representing Landlord or its independent contractor enters into an agreement with the union representing such porters fixing wage rates and benefits, etc.

4. "Tenant's Area": The parties agree that Tenant's Area is 8,391 square feet.

B. If, on any Computation Date during the term of this lease "Labor Rates" shall be in excess of those in effect on the Base Date, Tenant shall pay for the calendar year in which the Computation Date falls, an amount equal to the product obtained by multiplying Tenant's Area by the number of cents (including any fraction of a cent) of such excess of Labor Rates over the Labor Rates in effect on the Base Date.

C. On or after each Computation Date during the term of this lease, Landlord shall render to Tenant a statement (referred to as "Landlord's Labor Statement") containing a computation of any additional rent payable by Tenant by reason of an increase in Labor Rates for the calendar year in which such Computation Date falls. With respect to any period at the expiration of the term of this lease which shall constitute a partial calendar year, Landlord's Labor Statement shall apportion the amount of such increase. The obligation of Tenant in respect to such increase applicable to the last calendar year and/or partial calendar year of the term of this lease shall survive the expiration of said term. In the event Tenant fails to pay the amount shown on Landlord's Labor Statement when due, then Landlord shall be entitled, with respect thereto, to any and all remedies to which Landlord may be entitled under this lease for default in the payment of rent. The failure of Landlord to render a Landlord's Labor Statement under the provisions of this paragraph shall not prejudice the right of Landlord to thereafter render said statement for such calendar year or any subsequent calendar years.

D. Any additional rent shown upon Landlord's Labor Statement as aforesaid shall be payable by Tenant on the first day of the first month after the date of delivery of such Landlord's Labor Statement.

E. If Tenant's obligation under this Section 36 shall exceed $5,000 for any calendar year, then during the following year, Tenant shall pay monthly a sum equal to 1/12 of the amount so charged. Such amounts shall be applied on account of Tenant's obligation hereunder for the then current year.



40. Within 90 days of the execution and exchange of this Lease Tenant may assign this lease to a corporation to be formed by Tenant, provided all of the stock of which shall be owned by Tenant. Upon such assignment, Tenant shall be relieved of a of its obligations hereunder, provided Tenant shall execute and deliver an unconditiona Guarantee of all of Tenant's obligations accruing hereunder during the first four (4) years and two (2) months of the Lease term.

41. Tenant's Installations:

Notwithstanding anything hereinbefore contained to the contrary, provided Tenant complies with all of the laws, orders, rules and regulations of the governmental authorities and the Fire Insurance Rating Organization having jurisdiction thereof and the local Board of Fire Underwriters, or any other similar body, and provided further Tenant is not in default under any of the terms, covenants and conditions of this lease, Tenant shall have the right, at its own cost and expense, to install such machinery, equipment and fixtures as may be required for the proper conduct of Tenant's business, except that Landlord's prior consent shall be required for any installation requiring structural alteration or changes to the Demised Premises. Subject to the provisions of this Article, any and all movable machinery, equipment and fixtures installed by Tenant (sometimes herein referred to as "Tenant's Property") shall remain personalty notwithstanding the fact that it my be affixed or attached to the realty, and shall, during the term of this lease or any extension or renewal thereof, belong to and be removable by Tenant, provided that (a) Tenant shall remove said installations prior to the expiration of such term or the sooner termination thereof; and (b) Tenant shall repair any damage caused by said removal and shall deliver the Demised Premises to Landlord in the same condition as upon the commencement of the term hereof, reasonable wear and tear excepted. Prior to the expiration of the term or sooner termination thereof, Tenant shall, at its own cost and expense, remove from the Demised Premises all of Tenant's Property except such items thereof as Tenant shall have expressly agreed in writing with Landlord are to remain and to become the property of Landlord, and Tenant shall repair any damage to the Demised Premises resulting from such removal.

Tenant shall ascertain from Landlord within thirty (30) days prior to the end of the term hereof or any extension or renewal thereof whether Landlord desires to have any nonmovable fixtures, machinery and/or equipment permanently installed by Tenant removed from the demised premises and, if Landlord shall so desire, Tenant shall, prior to the end of the term hereof, remove such indicated items and restore the Demised Premises with respect thereto, to the same condition as upon the commencement of the term hereof, reasonable wear and tear excepted. All fixtures, machinery and equipment installed by Tenant, except those items which Landlord expressly agrees are to remain in the Demised Premises and become the property of Landlord, remaining within the Demised Premises after the expiration of such term or sooner termination thereof and after Tenant is no longer in possession of the demised premises shall, at Landlord's option, either (i) become the property of Landlord, free of any claim by Tenant or any person claiming through Tenant, or (ii) be removed and disposed of by Landlord, at Tenant's cost and expense, without further notice to or demand upon Tenant. Machinery, fixtures, chattels, or equipment, if any, furnished or installed by Tenant, the cost of which is to be borne by Landlord, shall become the property of Landlord upon payment therefor by Landlord or reimbursement of Tenant by Landlord, as the case may be, and shall not be removed by Tenant. Tenant's obligations under this Article shall survive the expiration or sooner termination of the term hereof.

Upon the completion of and payment for Tenant's work, and upon submission of reasonable proof of the same and reasonable proof of:

(a) the compliance and conformance of such work with all government: agencies having jurisdiction thereover, if any;
(b) the compliance and conformance of such work with the recommenda- tion of the Board of Fire Underwriters .

Landlord will contribute the sum of $149,582 towards the cost thereof to Tenant, within fifteen (15) days after appropriate request therefor.

42. Indemnity-Liability Insurance:

Tenant agrees to indemnify and save Landlord harmless against and from any and all claims by or on behalf of any person or persons, firm or firms, corporation or corporations, arising from any, work or thing whatsoever done by or on behalf of Tenant, in or about the demised premises, and will further indemnify and save Landlord harmless against and from any and all claims arising from any breach or default on the part of Tenant in the performance of any covenant or agreement on the part of Tenant to be performed, pursuant to the terms of this lease, or arising from any act or negligence of Tenant, or any of its agents, contractors, servants, employees or licensees, and from and against all costs, reasonable counsel fees, expenses and liabilities incurred in or about any such claim or action or proceeding brought thereon; and in case any action or proceeding be brought against Landlord by reason of any such claim, Tenant, upon notice from Landlord, covenants to resist or defend, at Tenant's expense, such action or proceeding by counsel reasonably satisfactory to Landlord.

Tenant covenants to provide on or before the commencement date of the term hereof and to keep in force during the term hereof for the benefit of Landlord and Tenant a comprehensive policy of liability insurance protecting Landlord and Tenant against any liability whatsoever occasioned by accident on or about the Demised Premises or any appurtenences thereto. Such policy is to be written by ~~good and solvent~~ insurance companies ~~satisfactory to Landlord~~, and the limits of liability thereunder shall not be less than the amount of Five Hundred Thousand ($500,000.00) Dollars—in respect of any one person, in the amount of One Million ($1,000,000.00) Dollars—in respect of any one accident, and in the amount of Twenty-Five Thousand ($25,000.00) Dollars—in respect of property damages. Such insurance may be carried under a blanket policy covering the Demised Premises and other locations of Tenant, if any. Prior to the time such insurance is first required to be carried by Tenant and thereafter, at least fifteen (15) days prior to the expiration of any such policy, Tenant agrees to deliver to Landlord either a duplicate original of the aforesaid policy or a certificate evidencing such insurance may not be cancelled except upon ten (10) days' notice to Landlord, together with evidence of payment for the policy. Tenant's failure to provide and keep in force the aforementioned insurance shall be regarded as a material default hereunder, entitling Landlord to exercise any or all of the remedies as provided in this lease in the event of Tenant's default.

[Margin handwriting: ...ensed ... trans- ... urance ... iness ... New ... k]

43. Tenant's Certificate:

Tenant shall, without charge, at any time and from time to time, within ten (10) days after request by Landlord, certify by written instrument, duly executed, acknowledged and delivered, to any mortgagee, assignee of any mortgage or purchaser, or any proposed mortgagee, assignee of any mortgage or purchaser, or any other person, firm or corporation specified by Landlord:

(a) that this lease is unmodified and in full force and effect (or, if there has been modification, that the same is in full force and effect as modified and stating the modifications);

(b) whether or not there are then existing any set-offs or defenses against the enforcement of any of the agreements, terms, covenants or conditions hereof upon the part of Tenant to be performed or complied with (and, if so, specifying the same); and

(c) the dates, if any, to which the rental and other charges hereunder have been paid in advance.

44. Modification for Mortgages:

If, in connection with obtaining financing or refinancing for the Building of which the Demised Premises form a part, a banking, insurance or other institution lender shall request reasonable modifications to this lease as a condition to such financing or refinancing, Tenant will not unreasonably withhold, delay or defer its consent thereto, provided that such modifications do not increase the obligations of Tenant hereunder (except, perhaps, to the extent that Tenant may be required to give notices of any defaults by Landlord to such lender and/or permit the curing of such defaults by such lender together with the granting of such additional time for such curing as may be required for such lender to get possession of the said Building) or materially adversely affect the leasehold interest hereby created. In no event shall a requirement that the consent of any such lender be given for any modification, termination or surrender of this lease be deemed to materially adversely affect the leasehold interest hereby created.

45. Broker:

Tenant represents and warrants that it has dealt with no broker excep N. Peter Burton & Co., Inc., and Cushman & Wakefield, Inc. (the "Broker") in connection with the execution of this Lease or the showing of the Demised Premises and agrees to hold and save Landlord harmless from and against any and all liabilities from any claims of any Broker (including without limitation, the cost of counsel fees in connection with the defense of any such claims) except the Broker.

46. "As-Is" Condition:

Tenant has examined and inspected the Demised Premises and Tenant agrees to accept said Demised Premises in their as-is condition existing on the commencement date of the term hereof.

47. Exculpatory Clause:

If the Landlord or any successor in interest be an individual, joint venture, tenancy in common, co-partnership, unincorporated association, or other unincorporated aggregate of individuals or a corporation (all of which are referred to below, individually and collectively, as a "landlord entity"), then anything elsewhere to the contrary notwithstanding, Tenant shall look solely to the estate and property of such landlord entity in the land and Building of which the Demised Premises are a part, for the satisfaction of Tenant's remedies for the collection of a judgment (or other judicial process) requiring the payment of money by Landlord in the event of any default or breach by Landlord with respect to any of the terms, covenants and conditions of the lease to be observed and/or performed by Landlord, and no other property or assets of such landlord entity shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies.

48. Air Conditioning:

So long as Tenant shall have duly kept and performed all of the terms, conditions, covenants and agreements and provisions to be kept and performed by Tenant under this Lease, Tenant shall be permitted to use the air conditioning package systems Landlord is installing ~~on each floor~~ to serve the demised premises and first floor lobby, with the understanding that the Tenant agrees, at its sole cost and expense, to do all the duct work necessary to bring the air conditioning to the Demised Premises and lobby.

Tenant shall be required to pay for any and all electricity required for the operation of such air conditioning equipment; the installation and operation of such air conditioning equipment shall not increase the cost to Landlord of operating and maintaining the building; Tenant shall maintain and repair such air conditioning equipment, including replacements, if any, at Tenant's sole cost and expense, and the installation and the operation of such air conditioning equipment shall not affect the utilities services or plumbing or electrical lines or mechanical systems of the building.

49. Attornment:

A. Tenant agrees that if by reason of default on the part of Landlord herein, under any ground or underlying lease or any leasehold mortgage affecting Landlord's interest (as ground lessee), a ground or underlying lessor or a leasehold mortgagee shall enter into and become possessed of the real property of which the Demised Premises for a part. or any part or parts of such real property, either through possession or foreclosure action or proceedings, or through the issuance and delivery of a new lease of the Premises covered by the ground or underlying lease to said leasehold mortgagee, then, if this Lease is in full force and effect at such time, Tenant shall attorn to such lessor or such leasehold mortgagee as its Landlord; and in such event, such lessor or leasehold mortgagee shall not be liable to Tenant for any defaults theretofore committed by Landlord and no such default shall give rise to any rights of offset or deduction against the rents payable under this Lease.

B. The provisions for attornment hereinbefore set forth shall not require the execution of any further instrument. However, if any such lessor or mortgagee to which Tenant agrees to attorn, as aforesaid, reasonably requests a further instrument expressing such attornment, Tenant agrees to execute the same promptly and if Tenant fails so to do. Tenant hereby appoints Landlord Tenant's attorney-in fact to execute any such instrument for and on behalf of Tenant.

51. Saving Provision:

If any provision of this Lease, or its application to any situation shall be invalid or unenforceable to any extent, the remainder of this Lease, or the application thereof to situations other than that as to which it is invalid or unenforceable, shall not be affected thereby, and every provision of this Lease shall be valid and enforceable to the fullest extent permitted by law.

52. Lease Not Binding Unless Executed:

Submission by Landlord of the within Lease for execution by Tenant, shall confer no rights nor impose any obligations on either party unless and until both Landlord and Tenant shall have executed this Lease and duplicate originals shall have been delivered to the respective parties.

53. Entire Agreement:

No earlier statement or prior written matter shall have any force or effect. Tenant agrees that it is not relying on any representations or agreements other than those contained in this Lease. This agreement shall not be modified or cancelled except by writing subscribed by all the parties.

54. Late Payment Clause:

It is agreed that the rental under this lease is due and payable in equal monthly installments in advance on the first day of each month during the entire lease term. In the event that any monthly installment of rent, or any other payment, required to be made by the Tenant under this Lease shall be overdue, a late charge of 2¢ for each dollar so overdue may be charged by the Landlord for each month, or fraction of each month, from its due date until paid, for the purpose of defraying the expense incurred in handling delinquent payments.

55. Security: On execution and exchange hereof, Tenant has delivered to Landlord a twelve (12) month, $93,984 irrevocable Letter of Credit issued by an entity licensed to transact commercial banking in the State of New York, in form which may be drawn upon at any time during said year by sight draft and affidavit of Landlord to the effect that Landlord is entitled to such sum specified in the affidavit and draft under the Letter of Credit by reason of Tenant's default under the Lease, in the same way as Landlord would be entitled to use and/or apply a cash security deposit under Section 31.

56. The Tenant's Covenants:

The Tenant will take good care of the demised premises, its fixtures, equipment and appurtenances, and all alterations, additions and improvements thereto; suffer no waste or injury thereto; make all repairs in and about the same, except to pipes, wires and conduits for the building which pass through the Demised Premises and except heating coils not in the Demised Premisses, necessary to preserve them in good order and condition, promptly pay the expense of such repairs and will not call upon the Landlord for any expenditure for repairs or improvements during the entire term of this lease. The Tenant will comply, at Tenant's expense with all laws, orders, ordinances and regulations applicable to the demised premises or to

the Tenant's occupation thereof, of the Federal, State, County and Municipal authorities and of each and every department, bureau and official thereof, and with any direction of any public office or officer, pursuant to law, which shall impose any duty upon Landlord or the Tenant with respect to the demised premises or the use and occupation thereof, and shall comply with all rules, orders and regulations of the New York Board of Fire Underwriters or any similar body applicable to the demised premises, as well as of any insurer under a policy affecting said demised premises. The Tenant will indemnify and save harmless the Landlord from and against any and all liability, penalties, fines, damages, expenses and judgments, including reasonable counsel fees, arising from injury to persons or property of any nature or extent occasioned wholly or in part by any act or acts, omission or omissions of the Tenant, or of the employees, guests, licensees, agents, assigns, or undertenants of the Tenant, and also for any matter or thing growing out of the use or occupation by the Tenant of the demised premises, or of its streets, sidewalks or vaults adjacent thereto during said term, and if any such penalties, fines, damages, expenses and judgments, including counsel fees are paid by the Landlord, each sum so paid shall be due and payable by the Tenant as additional rent hereunder. The Tenant will permit the Landlord at all [sonable] times during usual business hours to enter the demised premises for the purpose of inspection; permit the Landlord to make repairs alterations and improvements to all parts of the building, and to comply with all orders and requirements of any governmental authority applicable to said building or to any occupation thereof; permit workmen with necessary materials and tools, when authorized by Landlord or Landlord's agent, to enter the demised premises to make or facilitate such repairs. Landlord agrees to exercise its rights under this paragraph in such a manner so as to reduce the interference with Tenant's use and enjoym[ent] (by reason of such exercise) of the demis[ed] premises as much as practicable.

The Tenant accepts the demised premises in the condition as said premises now exist with full knowledge that the Landlord in no way represents that a license or permit for any business or purpose for which the premises may be used will be granted or continued if such license or permit is required by any law now in force or which may hereafter be enacted.

57.) Lawful Use

Tenant has made an independent inspection of the Demised Premises and of all lawful requirements for the use and occupa[ncy] of the premises for studios and editing rooms as set forth in Section 2. Tenant covenants and agrees to make all applications with all governmental authorities and perform at its expense all modifications and installations (subject to Sections 3 and 38) which may be required to the Demised Premises or to the Building of which the Demised Premises are a part in order to obtain all lawful consents and approvals for such uses. If any of the uses set forth in Article 2 shall be unlawful for any reason, other than the failure of Landlord to complete its work specified in Exhibit "B", then this Lease shall be fully enforceable by the Landlord except that Tenant's use shall be limited to only those uses, if any, for which Tenant has been able to procure all appropriate governmental consents and approvals. Landlord shall, at Tenant's expense, join in such application or make such application as may be required to obtain any such consent or approval.

58. Inducement to Tenant:

In order to induce Tenant to execute and exchange this Lease, Landlord has represented and agreed that:

a. Landlord shall not lease any portion of the Building to any tenant for a use of such space in a manner as would cause "extraordinary noise" (as hereinafter defined). Such uses which may cause "extraordinary noise" shall include, without limitation, the following: manufacturing, printing, model building, carpentry, cabinent making, warehousing, gymnasium, disco, dance studio and any other business or activity which would cause high impact noise or diaphramatic noise. Also, the following types of machinery and types of similiar to the following, shall not be permitted to be used in any portion of the Building: printing presses, stamping machines, milling machines, grinding equipment, electric saws, air compressors, internal combustion engines, vibrating furniture, paint mixers, forklifts, centrifugal extractors and motor vehicles. In no event shall any of the following enumerated items be considered a purpose or use which would cause extraordinary noise: general, executive and back room offices: and schools and colleges. With respect to the remaining portion of the ground floor not demised hereunder, in addition to the foregoing specifically permitted uses, the ground floor may also be used as a retail establishment, restaurant and/or bar and grill. "Extraordinary noises" shall be of a level which shall be transmitted into the demised premises in excess of 45 dbA when measured 6" from the surface of the demising walls or ceiling.

b. As a part of Landlord's work, Landlord will cause the electricity which shall serve the demised premises and the air conditioning unit(s) which serve the demised premises to be separately metered so that Tenant's electric charges referred to in Section 12 hereof shall only be to the extent of the usage reflected on such meter(s) and at the same cost thereof to Tenant had such service been provided to Tenant directly by the public air conditioning unit(s) which shall serve the demised premises shall also serve the lobby area on the first floor.

c. Landlord has agreed that the Tenant shall have 24 hour access, 7 days per week, to the Building, however, Tenant understands and agrees that Landlord shall be required to provide heat only during normal business hours, e.g. 9:00 a.m. to 6:00 p.m. Mondays through Fridays and 9:00 a.m. to 1:00 p.m. on Saturdays.

d. The rent shall commence sixty (60) days after Landlord has "substantially" (as said term is hereinafter defined) completed its work and turned the demised premises over to Tenant for performance by Tenant of its work. Tenant shall not be responsible for rent during any period wherein a permanent or temporary certificate of occupancy has not been issued for the Building or demised premises unless such issuance was prevented by acts of the Tenant. "Substantially" as used herein shall mean that any work as is complete shall be minor "punchlist" items or items which will not interfere with or impede Tenant's work or thereafter the Tenant's use and occupancy.

e. With respect to paragraph 12 and the insert thereto, it is understood and agreed that if Landlord erects an additional stairway in the Building through the demised premises, then: a) the fixed minimum rental of $93,984 per annum, shall be reduced by a product obtained by multiplying $12.00 times the number of square feet lost (e.g. the area occupied by such replacement stairway in the demised premises less any area added to the demised premises by the removal of any relocated stairway; and b) Tenant's area of 8,391 square feet set forth in Section 39 shall be reduced by the number of square feet lost; and c) said stairway, if constructed within the demised premises, shall be erected in only one of the areas designated on Exhibit A attached hereto and made a part hereof. Further, if, in Tenant's reasonable opinion, the stairwell as relocated within the demised premises shall make it impracticable for Tenant to use the demised premises for the purposes herein provided, then Tenant shall have the right and option to cancel and terminate this Lease effective no later than 30 days after the construction and installation of such stairwell.

ADDENDUM TO LEASE
@ 450 West 56th Street

NEXUS, INC. ("Tenant")

This Addendum modifies and supplements the referenced Lease and in the event of any conflict between either the printed portion or the Rider, this Addendum shall control:

1. At the time Landlord delivers the demised premises to Tenant, Landlord's work must be substantially finished, the premises "broom clean" and all Landlord's work in proper working order. Landlord's work shall include:

1. Repair of ceiling slab
2. Finish bathrooms
3. Repair of roof drain in SW corner
4. Demising walls fully constructed (8" concrete block)
5. Radiators installed on 10th Avenue wall
6. 200A 3 phase electric service to breaker panel in electric closet of demised premises
7. Hydraulic pump for freight elevator will be shock mounted

2. The following paragraphs shall be modified as follows:

#29: Any equipment (sprinklers, standpipes, hoses, etc.) necessary to conform with rules of Fire Insurance Exchange or Underwriters (unless such equipment is necessary because of the nature of Tenant's business or the uniqueness of Tenant's construction, which equipment shall be installed by Tenant at its expense) shall be installed by Landlord at Landlord's expense.

#41: Tenant will install its entrance and canopy on the10th Avenue side, subject to Landlord's permission, which will not be unreasonably withheld or delayed. Landlord's permission to have an exterior sign identifying Tenant, shall not be unreasonably withheld or delayed (Rule and Regulations #5).

#58 and #48: Tenant will get exclusive use of ground floor 20 ton air conditioning unit.

3. This Lease may be assigned to another company, on notice to Landlord, if a majority of the capital stock of such other company is held by Tenant and Tenant is not relieved of its obligations hereunder.

4. Landlord shall be permitted access, at reasonable times on reasonable notice, to the following portions of the demised premises: The freight elevator equipment room; the telephone room; the electrical closet; and the mechanical room.

5. Nothwithstanding any provision to the Lease to the contrary, the parties have agreed that the rent commencement date shall be February 1, 1984 provided however, that Landlord has completed the work specified in Addendum 1 above, on or before Nov 1, 1983 except as follows:

a. The demising walls need not be completed, until a reasonable period of time after Tenant has constructed its entrance on Tenth Avenue; and

b. The radiators along the Tenth Avenue wall will be installed promptly after their receipt by Landlord for installation, provided however, that prior to November 30, 1983, the plumbing necessary to accommodate such radiators are completed, and Landlord shall act with all due diligence to install such radiators within a reasonable time so as not to interfere either with Tenant's use and occupancy, nor with Tenant's construction.

ADDENDUM TO LEASE
@ 450 West 56th Street

NEXUS, INC. ("Tenant")

This Addendum modifies and supplements the referenced Lease and in the event of any conflict between either the printed portion or the Rider, this Addendum shall control:

1. At the time Landlord delivers the demised premises to Tenant, Landlord's work must be substantially finished, the premises "broom clean" and all Landlord's work in proper working order. Landlord's work shall include:

1. Repair of ceiling slab
2. Finish bathrooms
3. Repair of roof drain in SW corner
4. Demising walls fully constructed (8" concrete block)
5. Radiators installed on 10th Avenue wall
6. 200A 3 phase electric service to breaker panel in electric closet of demised premises
7. Hydraulic pump for freight elevator will be shock mounted

2. The following paragraphs shall be modified as follows:

#29: Any equipment (sprinklers, standpipes, hoses, etc.) necessary to conform with rules of Fire Insurance Exchange or Underwriters (unless such equipment is necessary because of the nature of Tenant's business or the uniqueness of Tenant's construction, which equipment shall be installed by Tenant at its expense) shall be installed by Landlord at Landlord's expense.

#41: Tenant will install its entrance and canopy on the10th Avenue side, subject to Landlord's permission, which, will not be unreasonably withheld or delayed. Landlord's permission to have an exterior sign identifying Tenant, shall not be unreasonably withheld or delayed (Rule and Regulations #5).

#58 and #48: Tenant will get exclusive use of ground floor 20 ton air conditioning unit.

3. This Lease may be assigned to another company, on notice to Landlord, if a majority of the capital stock of such other company is held by Tenant and Tenant is not relieved of its obligations hereunder.

4. Landlord shall be permitted access, at reasonable times on reasonable notice, to the following portions of the demised premises: The freight elevator equipment room; the telephone room; the electrical closet; and the mechanical room.

5. Nothwithstanding any provision to the Lease to the contrary, the parties have agreed that the rent commencement date shall be February 1, 1984 provided however, that Landlord has completed the work specified in Addendum 1 above, except as follows:

on or before November 30, 1983

a. The demising walls need not be completed, until a reasonable period of time after Tenant has constructed its entrance on Tenth Avenue; and

b. The radiators along the Tenth Avenue wall will be installed promptly after their receipt by Landlord for installation, provided however, that prior to November 30, 1983, the plumbing necessary to accommodate such radiators are completed, and Landlord shall act with all due diligence to install such radiators within a reasonable time so as not to interfere either with Tenant's use and occupancy, nor with Tenant's construction.

58. Indu. ment to Tenant:

In order to induce Tenant to execute and exchange this Lease, Landlord has represented and agreed that:

a. Landlord shall not lease any portion of the Building to any tenant for a use of such space in a manner as would cause "extraordinary noise" (as hereinafter defined). Such uses which may cause "extraordinary noise" shall include, without limitation, the following: manufacturing, printing, model building, carpentry, cabinent making, warehousing, gymnasium, disco, dance studio and any other business or activity which would cause high impact noise or diaphramatic noise. Also, the following types of machinery and types of similiar to the following, shall not be permitted to be used in any portion of the Building: printing presses, stamping machines, milling machines, grinding equipment, electric saws, air compressors, internal combustion engines, vibrating furniture, paint mixers, forklifts, centrifugal extractors and motor vehicles. In no event shall any of the following enumerated items be considered a purpose or use which would cause extraordinary noise: general, executive and back room offices: and schools and colleges. With respect to the remaining portion of the ground floor not demised hereunder, in addition to the foregoing specifically permitted uses, the ground floor may also be used as a retail establishment, restaurant and/or bar and grill. "Extraordinary noises" shall be of a level which shall be transmitted into the demised premises in excess of 45 dbA when measured 6" from the surface of the demising walls or ceiling.

b. As a part of Landlord's work, Landlord will cause the electricity which shall serve the demised premises and the air conditioning unit(s) which serve the demised premises to be separately metered so that Tenant's electric charges referred to in Section 12 hereof shall only be to the extent of the usage reflected on such meter(s) and at the same cost thereof to Tenant had such service been provided to Tenant directly by the public air conditioning unit(s) which shall serve the demised premises shall also serve the lobby area on the first floor.

c. Landlord has agreed that the Tenant shall have 24 hour access, 7 days per week, to the Building, however, Tenant understands and agrees that Landlord shall be required to provide heat only during normal business hours, e.g. 9:00 a.m. to 6:00 p.m. Mondays through Fridays and 9:00 a.m. to 1:00 p.m. on Saturdays.

d. The rent shall commence sixty (60) days after Landlord has "substantially" (as said term is hereinafter defined) completed its work and turned the demised premises over to Tenant for performance by Tenant of its work. Tenant shall not be responsible for rent during any period wherein a permanent or temporary certificate of occupancy has not been issued for the Building or demised premises unless such issuance was prevented by acts of the Tenant. "Substantially" as used herein shall mean that any work as is complete shall be minor "punchlist" items or items which will not interfere with or impede Tenant's work or thereafter the Tenant's use and occupancy.

e. With respect to paragraph 12 and the insert thereto, it is understood and agreed that if Landlord erects an additional stairway in the Building through the demised premises, then: a) the fixed minimum rental of $93,984 per annum, shall be reduced by a product obtained by multiplying $12.00 times the number of square feet lost (e.g. the area occupied by such replacement stairway in the demised premises less any area added to the demised premises by the removal of any relocated stairway; and b) Tenant's area of 8,391 square feet set forth in Section 39 shall be reduced by the number of square feet lost; and c) said stairway, if constructed within the demised premises, shall be erected in only one of the areas designated on Exhibit A attached hereto and made a part hereof. Further, if, in Tenant's reasonable opinion, the stairwell as relocated within the demised premises shall make it impracticable for Tenant to use the demised premises for the purposes herein provided, then Tenant shall have the right and option to cancel and terminate this Lease effective no later than 30 days after the construction and installation of such stairwell.

# EXHIBIT D

UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

HARTFORD FIRE INSURANCE COMPANY a/s/o Sync Sound, Inc.,

Plaintiff,

-against-

CUSHMAN & WAKEFIELD, INC, and 444 REALTY COMPANY, LLC

Defendant(s).

----------------------------------------------------------------X

Case No. 07 CV 2998 NRB

**AFFIDAVIT**

STATE OF NEW YORK )
) ss:
COUNTY OF NEW YORK )

Richard J. Tufano, being duly sworn deposes and says:

1. I am the Vice President and General Counsel for Enterprise Asset Management, Inc., ("Enterprise"), and I am employed by Enterprise.

2. Enterprise is the sole manager of the Defendant, 444 Realty Company, LLC, ("444 Realty").

3. Defendant 444 Realty has no employees and is managed only by its manager Enterprise through the employees of Enterprise.

4. 444 Realty was originally formed as a New York limited partnership under the name "444 Realty Company" (the "Limited Partnership") by Certificate of Limited Partnership filed with the Clerk of New York County on September 26, 1972; which Certificate of Limited Partnership was amended by Certificate of Amendment of Certificate of Limited Partnership which was filed with the Secretary of State of the State of New York on January 4, 1993 which inter alter changed the name of the Limited Partnership to "444 Realty Company LP."

5.    The Limited Partnership was converted to a limited liability company, pursuant to Section 1006 of the New York Limited Liability Company Law on April 10, 1997 and its name was changed to "444 Realty Company, LLC" in connection with such conversion. In addition, in April 1997, Enterprise assumed its role as the Manager of Defendant 444 Realty Company LLC. The Limited Partnership and Defendant 444 Realty are the same entity and have a continuity of existence and ownership.

6.    On October 27, 1983, Defendant, 444 Realty (under its former name, "444 Realty Company"), as landlord/owner of building located at 444-450 West 56th Street, entered into the Original Lease Agreement with tenant, Nexus Productions, Inc. for space located at 444-450 West 56th Street. The aforementioned Original Lease Agreement was made and kept by me in the ordinary course of business of Defendant 444 Realty, and it is the ordinary practice of said company to keep such agreements. A true and correct copy of this lease is annexed as 'Exhibit C' to Defendants' Motion for Summary Judgment Pursuant to Rule 56.

7.    On November 15, 1984, plaintiff, Sync Sound, Inc., acquired tenant Nexus' rights and assumed all Nexus' obligations under the Original Lease by Assignment. The aforementioned Original Lease by Assignment was made and kept by me in the ordinary course of business of Defendant 444 Realty, and it is the ordinary practice of said company to keep such agreements. A true and correct copy of said Assignment is annexed as 'Exhibit E' to Defendants' Motion for Summary Judgment Pursuant to Rule 56.

8.    On November 13, 1989, Defendant, 444 Realty and Sync Sound, Inc. entered into a Fourth Lease Amendment for space located at 444-450 West 56th Street. This Lease Amendment acknowledges that Sync Sound, Inc. is the tenant in question. It also incorporates the Original Lease and all prior riders, addendum and amendments thereto. The aforementioned Fourth Lease Amendment was made and kept by me in the ordinary course of business of Defendant 444 Realty, and it

is the ordinary practice of said company to keep such agreements. A true and correct copy of said amendment is annexed as 'Exhibit F' to Defendants' Motion for Summary Judgment Pursuant to Rule 56.

9.    On August 13, 2003, Defendant, 444 Realty and Sync Sound, Inc. entered into a Sixth Lease Amendment for space located at 444-450 West 56th Street. This Lease Amendment was in full effect at the time of the alleged loss and stated that the Original Lease and all agreements were in full force and effect. The aforementioned Sixth Lease Amendment was made and kept by me in the ordinary course of business for Defendant 444 Realty and it is the ordinary practice of Defendant 444 Realty to keep such agreements. A true and correct copy of said amendment is annexed as 'Exhibit G' to Defendants' Motion for Summary Judgment Pursuant to Rule 56.

10.    On or about, April 10, 1973, Defendant, Cushman & Wakefield, Inc. was hired to manage the building at 444-450 West 56th Street, which is owned by Defendant, 444 Realty, and has continued to manage said building to this date. In its capacity of building manager, Cushman & Wakefield, Inc. has been operating as an agent of the Defendant, 444 Realty.

11.    On or about April 28, 2004 Cushman & Wakefield, Inc. recommended to Enterprise, as the Manager of Defendant 444 Realty, a comprehensive roofing survey of the building at 444-450 West 56th Street, which is owned by Defendant, 444 Realty.

12.    Upon approval from Enterprise, in its capacity as Manager of Defendant 444 Realty, Cushman and Wakefield, Inc., obtained bids from several roofing engineer companies to evaluate the roof of the building at 444-450 West 56th Street, which is owned by Defendant, 444 Realty.

13.     WJE Engineers & Architects, P.C. was selected as the roofing engineer, and was given approval to commence a roof evaluation in September of 2004.

14.     On or about February 14, 2005, Cushman & Wakefield, Inc. received WJE Engineers & Architects, P.C.'s roof evaluation report which recommended roof replacement in varying degrees of the building at 444-450 West 56th Street, which is owned by Defendant, 444 Realty.

15.     On or about March 9, 2005, Cushman & Wakefield, Inc. submitted to Enterprise a project management services proposal to oversee the roof replacement of the building at 444-450 West 56th Street, which is owned by Defendant, 444 Realty. Said proposal included the report by WJE Engineers & Architects, P.C.

16.     Shortly thereafter, Cushman & Wakefield, Inc. was informed that its project management services were not required for the roof replacement of the building at 444-450 West 56th Street, which is owned by Defendant, 444 Realty.

17.     Cushman & Wakefield, Inc. did not manage, oversee or facilitate any part of the recommended roof repair or replacement of the building at 444-450 West 56th Street, which is owned by Defendant, 444 Realty.

18.     All work done to select, schedule and/or expedite a roofing contractor was done "in house" by employees of Enterprise in its capacity as Manager of Defendant, 444 Realty.

Sworn to me this 21st
day of December, 2007.

Notary Public
YVONNE L. VELEZ
Notary Public, State of New York
No. 41-4662173
Qualified in Queens County
Commission Expires 8/30/09

UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

HARTFORD FIRE INSURANCE COMPANY a/s/o Sync Sound, Inc., : Case No. 07 CV 2998 NRB

**AFFIDAVIT**

Plaintiff, :

**-against-** :

CUSHMAN & WAKEFIELD, INC, and 444 REALTY COMPANY, LLC :

Defendant(s). :

---------------------------------------------------------------X

STATE OF NEW YORK )
) ss:
COUNTY OF )

Deborah Tomasi, being duly sworn deposes and says:

1. I am a Portfolio Manager at Cushman & Wakfield, Inc. I was the Portfolio Manager for the building at 444-450 West 56th Street, which is owned by defendant, 444 Realty Company, LLC, from approximately February 2004 through the date of the alleged loss, August 14, 2005.

2. On or about April 28, 2004, Cushman & Wakefield, Inc. recommended to Enterprise Asset Management, Inc., a comprehensive roofing survey of the building at 444-450 West 56th Street, which is owned by defendant, 444 Realty Company, LLC.

4. Upon approval from and on behalf of Enterprise Asset Management, Inc., Cushman and Wakefield, Inc., contacted several roofing engineer companies to evaluate the roof of the building at 444-450 West 56th Street, which is owned by defendant, 444 Realty Company, LLC.

3. WJE Engineers & Architects, P.C. was selected and given approval to commence work in September 2004.

5. On or about February 14, 2005, Cushman & Wakfield, Inc. received WJE Engineers & Architects, P.C.'s report which recommended roof replacement in varying degrees of the building at 444-450 West 56th Street, which is owned by defendant, 444 Realty Company, LLC.

6. On or about March 9, 2005, Cushman & Wakefield, Inc. submitted to Enterprise Asset Management, Inc. a project management services proposal to oversee the roof replacement of the building at 444-450 West 56th Street, which is owned by defendant, 444 Realty Company, LLC. Said proposal included the report by WJE Engineers & Architects, P.C.

7. Shortly thereafter, Cushman & Wakefield, Inc. was informed that its project management services were not required for the roof replacement of the building at 444-450 West 56th Street, which is owned by defendant, 444 Realty Company, LLC.

8. As such, Cushman & Wakefield, Inc. was not involved in the bidding process to select a roofing contractor to repair or replace the roof of the building at 444-450 West 56th Street, which is owned by defendant, 444 Realty Company, LLC.

9. Cushman & Wakefield, Inc. did not manage, oversee or facilitate any part of the recommended roof repair or replacement of the building at 444-450 West 56th Street, which is owned by defendant, 444 Realty Company, LLC.

10. Any and all repair and/or replacement of the roof of the building at 444-450 West 56th Street, which is owned by defendant, 444 Realty Company, LLC, was completed without the involvement or direct supervision of Cushman & Wakefield, Inc. employees.

10. Any and all work done to select, schedule and/or expedite a roofing contractor and/or engineer was done solely "in house" by employees of Enterprise Asset Management, Inc.

[signature: Deborah Tomasi]

Sworn to me this 26th of December, 2007.

[signature]

State of NY, County of NY

ANNA VACCARO-STERN
NOTARY PUBLIC, State of New York
No. 24-4736993
Qualified in Kings County
Commission Expires November 30, 2009