UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
HARTFORD FIRE INSURANCE COMPANY
a/s/o Sync Sound, Inc.,                                            :     Case No. 07 CV 2998 NRB
                                                                         (electronically filed)
                                Plaintiff,                   :

   -against-                                                      :

CUSHMAN & WAKEFIELD, INC, and 444 REALTY           :
COMPANY, LLC

                              Defendant(s).                :
-------------------------------------------------------------------X


# DEFENDANTS' REPLY BRIEF IN
# SUPPORT OF SUMMARY JUDGMENT


                                                      Rosenblum Newfield, LLC
                                                      Attorneys for Defendants
                                                      50 Main Street, 10th Floor
                                                      White Plains, New York 10606
                                                      (914)686-6100
                                                      Fax (914)686-6140

By:   James F. Biondo

UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
HARTFORD FIRE INSURANCE COMPANY
a/s/o Sync Sound, Inc.,                                :    Case No. 07 CV 2998 NRB
                                                                                                          (electronically filed)
                                       Plaintiff,        :

**-against-**                                                  :

CUSHMAN & WAKEFIELD, INC, and 444 REALTY      :
COMPANY, LLC
                                     Defendant(s).      :
------------------------------------------------------------------X

## **CERTIFICATE OF SERVICE**

I hereby certify that on 22nd of February, 2008, the Reply Memorandum of Law, was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and /or the Southern District Court's Local Rules, and / or the Southern District Court's Rules on Electronic Service, and by way of regular mail, postage prepaid, upon the following parties and participants.

Dated: February 22, 2008
       White Plains, NY

                                                                ___s/_____
                                                                James F. Biondo

TO:    Michael B. Golden, Esq.
           Plaintiff's Attorney
           Robinson & Cole, LLP
           885 Third Avenue
           Suite 2800
           New York, NY 10022
           (212) 451-2900

## I. SUMMARY OF DEFENSE POSITION

The central entities in this case are, Defendant, 444 Realty Company, LLC and Tenant, Sync Sound, Inc. These parties mutually agreed to waive recovery via subrogation, in writing, as evidenced by the terms of their lease agreement and respective insurance policies. Despite the fact that the parties initially entered into the Original Lease Agreement almost twenty-five years ago, they were both still complying with its terms with respect to insurance coverage and waiver of subrogation. In compliance with the Original Lease Agreement, they both obtained insurance policies for the relevant time period which permitted waiver of subrogation. (See Exhibit I, pg 50 and Exhibit J, pg SS00256). Nonetheless, Sync Sound's insurance company, Hartford Insurance Company, is seeking to circumvent its insured's written agreement.

Plaintiff's main argument detailing the facts of this case is simply an attempt to divert the Court from this clear and undisputable fact. The questions of when the Defendants discovered the problem with the roof, or whether or not they took timely action to repair said roof, are irrelevant to the central issue by way of this motion. The fact of the matter is that the central entities waived *any* right of subrogation which may exist, and agreed to limit recovery to available insurance proceeds.

Plaintiff initially commenced the action arguing breach of contract as against Defendant 444 Realty Company, LLC, and negligence as against both Defendants, Cushman & Wakefield, Inc., and 444 Realty Company, LLC. It is clear that Plaintiff's claim of an alleged breach of contract, is merely a ploy to avoid the ramifications of the aforementioned lease agreement. Plaintiff's allegations focus on negligence theories, and even rely upon the same exact facts as that of the negligence count. Only after filing of this Summary Judgment Motion does Plaintiff concede that the waiver of subrogation clause precludes the negligence claim against Defendant, 444 Realty Company. It should also be pointed out that Plaintiff has not even established a triable issue on the breach of contract count, as it has not even submitted any evidence of a contract being breached.

Both landlord and tenant sustained water damage to their own property, filed separate claims for that property and subsequently received compensation for their property. Plaintiff's assertion that the loss incurred is not the type of risk agreed upon by the parties is unfounded. Clearly the loss is precisely the type of risk the parties contemplated in the lease agreement. Plaintiff's creation of a "David and Goliath" situation is misplaced. Landlord's incentive to maintain the property is not eliminated when a tenant seeks out separate insurance for personal property. Conceivably the landlord/building owner is at risk for potential greater loss by way of fire or other casualty.

## II. ARGUMENT

### A. The Waiver of Subrogation Provision Applies to all Claims

The Waiver of subrogation clause is enforceable as to "any claim against the other party" so long as the parties' respective insurance policies allow the insureds to waive their right to pursue subrogation. Plaintiff improperly misconstrues the plain and broad meaning of the subject waiver of subrogation provision in the lease agreement to apply only to tort claims. The clause is unambiguous in construction and intent. It applies to "any claim against the other party for recovery for loss or damage resulting from fire or other casualty . . . ." The Lease goes on to state that Landlord and Tenant each "hereby releases and waives all right of recovery against the other of any one claiming through or under each of them by way of subrogation or otherwise." Nowhere in the Lease document does it say that the parties are to look only to available insurance for tort claims. The document states that the parties are to first and only look to available insurance as to "any claim." The document does not say only tort claims are waived, it says the parties release and waive "all right of recovery . . . by way of subrogation. . . ." Despite this, Plaintiff is trying to persuade the Court that the parties meant only to limit tort actions. The Original Lease Agreement does not in any way limit the clause to tort claims, and if the parties did so intend, some type of limiting language

2

would have been used. Should there be any ambiguity as to the intent of the waiver clause (which there clearly is none), the Original Lease Agreement goes on to state that "Tenant acknowledges that Landlord will not carry insurance for Tenant's . . . equipment . . . and agrees that Landlord will not be obligated to repair any damage thereto or replace the same." Clearly this language is pertinent to this claim, whether it be a claim of negligence or breach of contract. From a plain reading of this last sentence of Section 9(e) (which Plaintiff conveniently omitted from its brief when it quoted said section), the Tenant acknowledges that Landlord will not be obligated to repair or replace Tenant's possessions. To cover this exposure, the subject entities (both Landlord and Tenant) purchased insurance which permitted this very type of waiver. Clearly, Tenant was not required to purchase insurance on the replacement value of Landlord's building in the event of casualty, as Landlord was not required to purchase insurance on the Tenant's individual possessions.

The only condition precedent to enforceability of the waiver is that the parties' insurance companies permit the waiver, and that insurance be available for the loss. These conditions were satisfied in this case. As required by the Original Lease Agreement, Plaintiff insurance company, insurer for tenant Sync Sound, and Factory Mutual Insurance, insurer for Defendant 444 Realty Company, allowed the respective parties to waive the right of subrogation. The fact that the insurance policies of both entities specifically had language which permitted waiver of subrogation, is evidence that the subject entities were still following the terms of the Original Lease Agreement. Following the terms of the Original Lease Agreement, Tenant Sync Sound did not bring a direct action against Defendants. It first turned to its insurance company. As the tenant's loss was a covered loss of the subject policy, Plaintiff paid the claim. Plaintiff's attempt to now circumvent its insured's written agreement is wrong and should not be permitted.

Plaintiff's sweeping statement that waiver of subrogation clauses only apply to tort claims

3

and not to contracts claims is premised on a misinterpretation of the very first case cited by Plaintiff, Gap, Inc. v Red Apple Cos. 282 A.D. 2d 119, 725 N.Y.S.2d 312 (1st Dep't 2001). To start, in Gap the two plaintiffs were tenants (The Gap and Rite Aid) of the subject building, and not the insurance company of said tenants. Said plaintiffs were seeking to recoup monies that *were not covered* by insurance. Id., at 120. This was not a case of an insurance company seeking to recoup monies it paid out to one of its insureds by way of a subrogation action. While the respective leases in the Gap case did contain waiver of subrogation clauses, the Court held that the "uninsured segment of the loss falls outside the ambit of 'risk insured against' for purposes of inclusion in the waiver of subrogation clause. . . . Absent coverage and payment of an insured loss, there is no right to subrogation and, thus, the waiver of clause has no application." Id., at 123. According to Plaintiff's complaint in the instant action, the only uninsured expense paid out by tenant Sync Sound is a $1,000.00 deductible. (Exhibit A, pg 1, paragraph 4.) Admittedly this one thousand dollar deductible would fall outside of the subject waiver of subrogation clause, as it was an uninsured loss.

With the Gap case not applicable to this action, plaintiff is left with the holding of Viacom International v. Midtown Realty, 193 A.D. 2d 45, 602 N.Y.S. 2d 326 (1st Dept. 1993), which appears to be relying upon the holding of St. Paul Fire and Marine Insurance v. Protection Mutual Insurance Company, 644 F. Supp. 38 (S.D.N.Y. 1986). These cases can also be clearly distinguished.

To start, contrary to the representation of Plaintiff in the opposition brief, the waiver of subrogation clause in the case of St Paul Fire and Marine Insurance v. Protection Mutual Insurance Company (Supra) is not identical to the waiver of subrogation clause in the instant case. While the provisions are similar, the clause in St Paul Fire is missing a critical sentence as compared to the subject clause of this case. The missing sentence in St Paul Fire is the last sentence of section 9(e), which reads as follows, "Tenant acknowledges that Landlord will not carry insurance for Tenant's

4

furniture and/or furnishing or any fixtures or equipment, improvements, or appurtenances removable by Tenant, and agrees that Landlord will not be obligated to repair any damage thereto or replace the same." As is argued above, this last sentence of paragraph 9(e) removes any ambiguity as to the intent of the parties of the lease agreement. This sentence which clearly denotes the intent of the agreement was not present for evaluation by the District Court in St Paul Fire. As mentioned above, Plaintiff conveniently failed to provide this sentence to the Court in its opposition brief (See pg 9 of Plaintiff's Memorandum of Law). Said sentence was not even relevant in St Paul Fire, as this was a case where the owner's insurance company was seeking to have the tenant's insurance company share in the costs to rebuild the building after fire. It also should be noted that said sentence in the Gap case, Supra, also did not contain the aforementioned sentence. Id., at 121-122.

Putting aside the fact that the subrogation section, paragraph 9(e), in St Paul Fire was different, the case can also be clearly distinguished on the facts. In St Paul Fire, the owners of the building were Paul Saurel and US Trust Company. St. Paul Fire and Marine Insurance provided a fire protection policy on the subject building for US Trust. The tenant of the building was Pellon Corporation, which was insured by Protection Mutual Insurance Company for general business losses. There was a fire in the subject building and Pellon demanded that US Trust make repairs pursuant to the lease agreement. When US Trust failed to repair, Pellon brought action against US Trust and Trust impled St Paul Fire as a third party defendant. As part of the settlement of said action, St Paul agreed to cover the fire damage, however it obtained an assignment and subrogation of Pellon's rights against Protection. St. Paul then brought the action claiming: 1) both policies were excess to each other and therefore under NY law each insurance company must bear a pro rata share of the loss, and 2) that it could sue Protection directly on the Protection policy, based on the assignment subrogation agreement. Id., at 39. Protection sought and received summary judgment

on both grounds, and St Paul filed a motion for reargument. It is this opinion on the motion for reargument that Plaintiff cites in support of its position. After reargument and reconsideration, the Court maintained its decision granting summary judgment on both counts. Id., at 39 - 40. Thus in St. Paul Fire, it was not a case of a tenant's insurance company seeking to recoup insurance proceeds paid out to one of its insureds, but was a case wherein a building owner's insurance company was seeking to have the tenant's insurance company pay part of the fire damage to the structure of the building. The District Court did not permit recovery by the building's insurance company. The Court went on to hold that paragraph 9(e) did not even apply to this particular type of situation, which instead was governed by paragraph 9(b), which states that in the event of fire damages, all damages shall be "repaired by and at the expense of the Landlord." Id., at 40. In concluding, the Court noted the following:

> In the final analysis Trust and Pellon contracted in good faith by lease that Trust should bear the risk of fire loss to the premises. St. Paul and Trust in turn contracted to shift the risk to St. Paul by way of its insurance policy. St. Paul received valuable consideration for assuming the risk. It may not now avoid the liability which it willingly contracted to accept.

This is precisely what Plaintiff insurance company is seeking to do in this case. The landlord and tenant entered into a contract. The contract expressly states that Landlord is not responsible for Tenant's equipment, furnishing, etc., in the event of casualty. To cover this exposure, Tenant contracted with Plaintiff insurance company to provide protection to Tenant's equipment, furnishing, etc., and received good and valuable consideration in return. After Plaintiff insurance company was forced to cover its insured for the underlying loss, it now seeks to circumvent its insured's written agreements preventing subrogation. It is doing so despite the fact that its own policy of insurance permitted the Tenant to waive subrogation. As in St. Paul Fire, this should not be permitted.

As for the third and final case cited by Plaintiff on this issue, plaintiff relies on Viacom International, Inc., v. Midtown Realty, Supra. This case is also distinguishable. In this case,

6

Midtown Realty was the building owner, and Viacom was a tenant of building. There was a fire in the subject building, caused by an overheated extension cord used by a Viacom employee. Viacom claimed damages to its demised premises, the leasehold improvements and to its personal property, totaling $1,500,000.00, a claim that was fully paid by its insurance company. In said action, Midtown's (the owners) insurance company sought subrogation from the tenant, Viacom. Id., at 46-47. Again, this was not a case in which a tenant's insurance company was seeking to recoup insurance monies paid out to one of its insureds, it was a case in which the building owner's insurance company was seeking to have the tenant found responsible for the cost of repair the building secondary to fire. The question of a tenant's insurance company seeking to get around a waiver of subrogation clause and have the building owner held responsible for the replacement of the tenant's personal possessions, in the face of a provision which states "Tenant acknowledges that Landlord will not carry insurance for Tenant's . . . equipment . . . and agrees that Landlord will not be obligated to repair any damage thereto or replace the same" was not at issue or relevant to the court in Viacom. Thus, given the factual discrepancies, the holding and rationale should not apply.

Plaintiff's contention that the ruling in Indian Harbor v. Dorit Baxter, 430 F. Supp. 2d 183 (S.D.N.Y. 2006), does not apply in the instant action is misguided. Indian Harbor is directly on point as the waiver applied to both tort and contract claims. Such is the case here, the waiver language in this case is all encompassing. It does not specify either contract or tort, but rather applies to "any claim," whether arising out of "fire or other casualty, and to the extent that such insurance is in force and collectible." After sustaining water damage to its property, Plaintiff's insured, Sync Sound performed in accordance with the terms of the lease agreement and turned to Plaintiff insurance company for recovery for the property damage. Defendant, 444 Realty Company also sustained property damage resulting from the leak, and also turned to its own insurer, Factory Mutual, and filed

7

a claim for the property damage. Both insurance policies were "in force" at the time of the loss and both parties rightfully collected under them to compensate for their respective losses. Sync Sound and 444 Realty Company thereby "released and waived all rights of recovery against the other or anyone claiming through or under them by way of subrogation or otherwise." The parties exercised the terms of their lease as they intended, and did so with the mutual permission by both insurance companies, which evidently deemed the claims payable. Such recovery is exactly the sort contemplated under the terms of the lease agreement. As such, plaintiff's attempt to extract a different meaning from the unambiguous language of the waiver of subrogation clause is baseless.

### B. Plaintiff's Contract Claim is Nothing More Than a 'Dressed Up' Negligence Claim

Nonetheless, Plaintiff's alleged breach of contract claim is nothing more than a 'dressed up' negligence claim, and is solely being asserted in an attempt to avoid the known contractual ramifications of the waiver of subrogation clause. The allegations in this action sound in negligence, and thus Plaintiff's breach of contract claim should not be permitted. *See*, Farmington Casualty v. 23rd Street Properties, 250 F. Supp 293, 298 (S.D.N.Y., 1999)(holding plaintiff's reliance on the lease is an effort to "dress its unavailing negligence claim in breach of contract clothing, and, thereby, avoid dismissal. This effort does not succeed.").

### C. Claim of Negligence as to Cushman Barred by the Waiver of Subrogation Provision.

Plaintiff attempts to circumvent the waiver as to its negligence claim against Defendant, Cushman & Wakefield, by asserting the lease does not expressly mention Cushman in the provision. This assertion is unfounded. To start, it is noted that Plaintiff failed to cite any case law to contradict Defendants' position on this point. Defendant 444 Realty Company certainly is a party to the lease, and Cushman & Wakefield was acting at its managing agent. "[A] reading of the lease, as a whole, demonstrates that it was the intent of the parties to the lease that both the landlord...and the

8

management company...be protected equally." <u>Insurance Company of North America v. Borsdorff Services, Inc. et al</u>, 225 A.D.2d 494, 639 N.Y.S. 2d 816, 817 (1996) citing, <u>Pilsener Bottling Co. v. Sunset Park Indus. Assoc.</u>, 201 A.D.2d 548 (1994). Indeed, the lease agreement does specifically contemplate claims made by, through, or under the parties; "Landlord and Tenant each hereby releases and waives all right of recovery against the other *or anyone claiming through or under each of them* by way of subrogation or otherwise." As managing agent acting under Defendant 444 Realty Company, Defendant Cushman & Wakefield is afforded the same protection of the waiver of subrogation language of the lease agreement. As such, this claim is barred by way of the waiver.

## D. No Credible Evidence of Negligence Which Caused Harm to Plaintiff

Even if the Court were to conclude that the waiver provision did not apply to Cushman & Wakefield, there is no credible evidence establishing that Cushman & Wakefield's actions constituted negligence which caused harm to Plaintiff. Clearly, Cushman & Wakefield took action to have the subject roof inspected in 2004, which resulted in the Wis Janney report of February 2005. At this point, the building owners decided not to utilize Cushman's services for the roof replacement, and handled the project in house. (See Exhibit D) The subject loss did not occur until August of 2005. As Plaintiff has not put forth proper evidence to demonstrate the existence of a triable issue of fact on this point, summary judgment is warranted. <u>Indig v. Finkelstein</u>, 23 N.Y. 2d 728, 729, 296 N.Y.S. 2d 370 (1968).

## E. Public Policy Argument is Unfounded and Has Been Repeatedly Rejected by the Courts

Plaintiff's argument that public policy reasons should prohibit a party from seeking to enforce a mutually beneficial risk sharing agreement is unfounded and must fail. Plaintiff failed to cite any authority to support this position. To the contrary, the Courts have held that even in cases of alleged gross negligence, ie., reckless or wanton conduct, the waiver of subrogation clause is controlling.

See Indian Harbor, 430 F. Supp. 2d at 189-191; see also St. Paul v. Universal Builders, 409 F.3d 73, 85-87 (2d Cir. 2005). As this Court is aware, gross negligence is not even alleged in this action.

Also, the unusual and somewhat strange apparent attempt to gain sympathy by way of the affidavit of John Beres, who states that the insurance company "may" increase rates if there is a loss, and "generally takes" a subrogation recovery into account in determining rates, is not relevant as to this issue. The Courts have consistently held that "parties to a commercial transaction are free to allocate the risk of liability to third parties through insurance . . .." Ins. Co. of North America v. Borsdorff Servs., 639 N.Y.S.2d 816, 816 (App. Div., 1996).

**F. Conclusion**

In the instant action, the waiver of subrogation clause in the lease agreement is unambiguous in meaning and intent. Sync Sound and 444 Realty entered into a lease agreement intending to "waive all right of recovery against the other" in the event of casualty. Plaintiff's breach of contract claim is subject to this clause. Plaintiff concedes the negligence claim against 444 Realty Company is barred. Similarly, the negligence claim against Cushman & Wakefield, as 444 Realty Company's managing agent at the time of the alleged loss, should also be barred as a matter of law.

Dated: White Plains, New York
      February 22, 2008

                              Yours etc., ROSENBLUM NEWFIELD, LLC

                              ___s/ James F. Biondo___
                              James F. Biondo / Fed Bar #JB 2429
                              Attorneys for Defendants
                              50 Main Street
                              White Plains, NY 10606
                              (914) 686-6100